FRED J. FEWINGS v. LUTHER MENDENHALL.[1]

January 23, 1903.

Nos. 13,126—(72).

### Street Railway—Duty to Passengers.

A carrier of passengers is charged with the highest degree of care and foresight consistent with the orderly conduct of its business, in respect to the protection of its passengers from injuries resulting from its acts or omissions, from the acts or omissions of its servants, and from the

[1] Reported in 93 N. W. 118.

acts of strangers who are under its control or direction; but it is charged with ordinary care and prudence only to guard against the lawless acts of third persons not under its direction or control.

## Operating Cars during Strike—Negligence.

Defendant was engaged in operating a street car system, and his employees had inaugurated a general strike, which was bitterly contested, and resulted in much violence on the part of the lawless element among the strikers and their sympathizers. Defendant continued to operate his cars, and plaintiff was injured, when a passenger on one of them, by being struck upon the head by a stone thrown from the street into the car by a strike sympathizer, a person in no way under the control or direction of defendant. In this action to recover damages for such injury, it is held: (1) That defendant was not guilty of negligence in attempting to operate his cars during the strike; and (2) that the evidence is insufficient to justify a finding of actionable negligence against defendant as respects the act resulting in plaintiff's injury.

## Protection against Acts of Strangers.

The rule of ordinary care and prudence is not so exacting as to require the person charged with its exercise to take unreasonable or extremely doubtful precautions to guard against the wilful and lawless acts of strangers. The failure of defendant to pull down the blinds of the car in which plaintiff was riding, or stretch a heavy canvass over the windows outside the car, was not negligence justifying a recovery against him.

Action in the district court for St. Louis county against defendant as receiver of Duluth Street Railway Company to recover $25,626.88 for personal injuries received by plaintiff while riding as a passenger in defendant's street car during a strike by defendant's employees. Plaintiff was struck by a stone thrown by a strike sympathizer. The case was tried before Cant, J., and a jury, which rendered a verdict in favor of plaintiff for $10,383.33. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed, and judgment ordered for defendant.

*Greene & Wood*, for appellant.

*John Jenswold, Jr.*, for respondent.

BROWN, J.

Action to recover damages for personal injuries alleged to have been occasioned by the negligence of defendant. Plaintiff had a verdict in the court below, and defendant appealed from an order denying his motion for judgment notwithstanding the verdict or for a new trial.

The case was here on a former appeal. 83 Minn. 237, 86 N. W. 96. The facts are there fully stated, but for an understanding of the questions presented at this time a restatement is necessary; but in doing so we follow substantially the statement there made. Defendant, as receiver of the Duluth Street Railway Company, has operated its street car system since July, 1898. On May 2, 1899, a general strike was inaugurated by the employees of the company, which was maintained until after the plaintiff was injured as hereinafter stated. Defendant procured other men to take the place of the strikers, and continued to operate the street car lines. On Sunday evening, May 7, plaintiff took passage in a car operated by defendant, at Superior, in the state of Wisconsin, for Duluth. While the car was going northerly along Garfield avenue in Duluth, and as it approached Michigan street, a young man, not in any way connected with the company as an employee or otherwise, not a passenger, nor in any way under the control or direction of defendant, threw a stone at the car in which plaintiff was so riding, which passed through the window thereof, and struck plaintiff on the head, whereby he was seriously injured. He brought this action to recover damages because of such injury, basing his claim to a right of recovery on the alleged negligence of defendant in failing to take proper precautions to prevent injuries from acts of this kind.

The complaint alleges, among other things, that plaintiff, as a passenger, was exposed to imminent danger by reason of the violent and unlawful acts of the strikers and their sympathizers; and that defendant, in the exercise of due care and prudence, could have prevented the same and protected plaintiff and the other passengers in the car from injury; but, notwithstanding this, that he carelessly failed and omitted to warn the plaintiff of any danger, or to make any effort or take any precautions to prevent

injury to him, or to provide or make use of any barriers or other means to avert injury resulting from acts of the kind complained of. It was held on the former appeal that defendant was not guilty of negligence in attempting to operate the cars during the strike, and that the trial court erred in submitting that question to the jury. The cause was remanded, and again tried, resulting in a finding by the jury that defendant was guilty of negligence in failing to take proper precautions to avert and prevent accidents of the kind complained of, and returned a verdict for plaintiff for the sum of $10,383.33.

The principal question presented for consideration at this time is whether the evidence is sufficient to sustain a finding of actionable negligence against defendant. Other questions are discussed in the briefs of counsel, but the evidence upon this question appears to be substantially the same as on the former trial, and it is due to the parties that the question be now met and determined, that the litigation may be brought to an end, and further expense obviated. In the consideration of this question it is proper to inquire first the degree of care required of defendant under circumstances like those shown, for in determining whether he was guilty of negligence which was the proximate cause of plaintiff's injury we must be guided by the rules of duty and care necessary to be exercised in such cases. Though no exceptions were taken to the charge of the trial court, wherein the jury was instructed that defendant was charged with the highest degree of care and foresight for the protection of plaintiff while a passenger, the question is properly presented by the errors assigned on the motion for a new trial and by the assignments of error in this court.

The strike which the employees of the street railway company inaugurated was bitterly and stubbornly contested, and resulted in much lawlessness and acts of violence on the part of the strikers and their sympathizers towards the property of the company, with the purpose in view of preventing the operation of the cars and forcing a submission to their terms. The act which resulted in plaintiff's injury was not committed by an employee, a fellow passenger, or by one having any connection or relation whatever

with the company, but by a boy who was in no way under the control of the company or any of its agents. He was a sympathizer with the strikers, and by his act of lawlessness no doubt thought he was aiding their cause.

The question as to the extent of responsibility of a carrier of passengers and the degree of care essential to be exercised for their protection as to acts committed by strangers to the carrier has never, prior to this case, been presented to this court for its decision. The general rule that such carrier is required to exercise the highest degree of care and foresight consistent with the orderly conduct of its business is one that has very uniformly been applied by all the courts in cases where the act or omission complained of as negligence was in respect to a matter under the control of the carrier. A carrier of passengers is required to exercise the highest care in respect to the equipment of its road and transportation facilities, in providing suitable machinery for the operation of its cars, in the employment of competent and faithful servants and agents, and generally, as to all acts pertaining in any way to the conduct of its affairs in furtherance of its undertaking as a carrier; and in respect to such matters the rule has always been very strict.

It is insisted by plaintiff that the rule applies to this case, and that it was the duty of defendant, in view of the condition surrounding the strike, to exercise the utmost care and vigilance to guard and protect plaintiff, while a passenger, from acts of violence at the hands of persons, whether under the control of defendant or not, and from dangers from whatever source arising. It is insisted that the act of the boy who threw the stone in question was such as the defendant might, from the circumstances and conditions of the strike, reasonably have anticipated, and could have guarded against and prevented.

We have been cited to no case where the high degree of care essential as to matters within the control of the carrier has been extended and applied with all its force and strictness to acts of persons beyond its control, and for which it was in no way responsible, directly or indirectly. Some cases cited and relied upon by plaintiff do not sustain his position.

Exton v. Central, 62 N. J. L. 7, 42 Atl. 486, was a case where the company had permitted hackmen to occupy its premises in soliciting trade, and a passenger was injured by their misconduct. The company was held liable; but the decision is placed upon the ground that the company had the right to control its depot grounds and buildings, and, as it permitted hackmen to occupy the same, was responsible to passengers for injuries resulting from their misconduct, if it failed to exercise proper care to protect them.

Wright v. Chicago, 4 Colo. App. 102, 35 Pac. 196, was a case where the company permitted disorderly persons to become and remain passengers, and is not in point. It was the clear duty of the company in that case to exercise the highest care to prevent injury to passengers from the acts of disorderly passengers, and the strict rule was clearly applicable to the facts there shown. It is well settled that a carrier of passengers is bound to exercise the utmost care to maintain order and guard and protect passengers from violence and insult at the hands of fellow passengers, from such injury and insult as might reasonably have been anticipated or naturally expected to occur, in view of all the circumstances and the number and character of passengers on board. Lucy v. Chicago Great Western Ry. Co., 64 Minn. 7, 65 N. W. 944; Mullan v. Wisconsin Cent. Co., 46 Minn. 474, 49 N. W. 249. The rule is founded upon the fact that the company has control of its cars and premises, a police supervision to prevent violations of the law, and may lawfully eject and remove disorderly persons therefrom, or arrest or otherwise suppress and control them.

In Savannah v. Boyle, 115 Ga. 836, 42 S. E. 242, the employees of the company had taken two tramps, who were concealed about the train, and trespassers thereon, and placed them in the express car, tying them there with a rope about their wrists. During their struggle to escape one of them shot the express agent in charge of the car. The general principle of law was applied, and it was held that it was the duty of the railway company to protect its passengers from insult or injury at the hands of a fellow passenger, or third person, when the circumstances are such that a person in the exercise of that degree of diligence known to the

law as extraordinary care would see and apprehend that the passenger was in danger of injury. It was accordingly held that, as the company had placed the tramps in the car, and assumed charge and control of them, the strict rule of care essential in such cases applied, and protected the express agent to the same extent as a passenger. Empire Transp. Co. v. Philadelphia & R. Coal & Iron Co., 23 C. C. A. 564, 77 Fed. 919, and Haas v. Kansas City, 81 Ga. 792, 7 S. E. 629, were cases involving the liability of carriers of freight, and are not in point, for a different rule of responsibility exists as to such carriers. In respect to goods a carrier is an insurer for the safe transportation and delivery of the property intrusted to it for carriage, and is relieved from liability only by the act of God or the public enemy. A carrier of passengers is not an insurer of their safety, and is liable to them for such injuries as result from its failure to exercise proper care for their protection.

A number of other cases are cited and relied upon by counsel, wherein the general rule is stated substantially as contended for by him, namely, that a carrier of passengers is required to exercise the utmost vigilance to protect passengers from insult and injury from whatever cause arising; but an examination of them shows that they are all cases where the carrier had permitted third persons to enter upon its premises or cars, and thereafter failed to exercise a proper degree of care to restrain them from acts of lawlessness; and there can be no question as to their soundness.

The question before us is whether this strict rule applies to the act of a stranger, such as here shown. That it does not is sustained by some very respectable authorities. Tall v. Baltimore, 90 Md. 248, 44 Atl. 1007; Pennsylvania v. MacKinney, 124 Pa. St. 462, 17 Atl. 14; Thomas v. Philadelphia, 148 Pa. St. 180, 23 Atl. 989; Chicago v. Pillsbury, 123 Ill. 1, 21, 14 N. E. 22.

In our opinion, it would be unjust to require a carrier of passengers, either a steam or a street railway company, to exercise the utmost care and vigilance to guard and protect passengers from criminal acts of strangers, persons not under its control or subject to its orders, and for whose acts it is in no way re-

sponsible. And we hold, without further discussion, as respects the acts of such strangers, that carriers of passengers are liable for the exercise of ordinary care and prudence only. Such carrier is liable for all injuries resulting from the acts of strangers which are reasonably to be anticipated under the particular circumstances, and which ordinary care and prudence, had they been exercised, would have prevented.

It remains to consider whether, within this rule, the evidence is sufficient to sustain the charge against defendant of actionable negligence, the burden to show which was upon the plaintiff.

The familiar rule that evidence of an accident is prima facie proof of negligence against the carrier, can have no application to this case, because the act resulting in the injury did not arise from any act or omission of defendant. The presumption of negligence in such cases arises only where the thing causing the injury complained of was under the exclusive control of the carrier or its servants or employees. The act complained of here being that of a stranger, it was incumbent upon plaintiff affirmatively to prove that defendant failed to exercise proper care to prevent it. The question arises whether the evidence was sufficient to charge defendant with negligence in this respect. What, if anything, should he have done, which he did not do, to protect plaintiff and other passengers from acts of this kind? It is claimed that he should have pulled down the blinds of the car in which plaintiff was riding. It appears that the material of the blinds inside the windows was leather, and the contention is that, had they been pulled down, the stone thrown by the boy would not have passed into the car, or in any way injured the plaintiff. It is also contended that the defendant might have protected plaintiff from this injury by stretching a heavy canvas over the windows outside the car; and, lastly, that he should have informed plaintiff of the conditions existing during the strike, the fact that violent and lawless acts were being committed by the strikers and their sympathizers.

As to the first two theories of the plaintiff,—pulling down the inside blinds and stretching a heavy canvas outside the car over the windows,—we are of the opinion that the failure to do this is

not sufficient on which to base a recovery. It would be unreasonable to require of defendants so to act, and though, perhaps, the suggested precaution would have prevented such an injury as that here complained of, and conceding that defendant was bound to anticipate an unlawful act of this kind, the rule of ordinary care and prudence is not so exacting as to require one charged with its exercise to take doubtful or unreasonable precautions to guard against the lawless acts of strangers. And, besides, it is reasonably clear that, had defendant pulled down the blinds of the car in question, or covered the outside of the windows with a heavy canvas, it would have provoked the strikers and their sympathizers to acts of greater violence. They would naturally have assumed, on seeing the car pass in that condition, that either the officials of the road or nonunion or scab employees were aboard, and it would have incited the lawless element to greater efforts to prevent the operation of the cars.

As to the third proposition,—that defendant was in duty bound to notify plaintiff of the violent conduct of some of the strikers and their sympathizers,—we are unable to concur with plaintiff, for these reasons: He was a resident of Duluth, and had occasion daily to use the cars of defendant in passing to and from his home to his place of business. He knew that a strike had been inaugurated by the street car employees, and the conditions surrounding it were so notorious and generally known as to preclude the possibility, even, that he was not fully aware of the lawlessness of the strikers. He was in as good a position as was defendant to anticipate dangers of this kind. Whatever defendant knew concerning the acts of the strikers was obvious and apparent to all persons of ordinary intelligence. Defendant exercised the precaution of inducing the city authorities to swear in a large force of extra policemen to prevent criminal acts of the strikers and their sympathizers. If they were unable to control the mob and prevent acts of this kind, we are at a loss to know what defendant could have done to prevent them, short of armoring his cars, and this, of course, would be so unreasonable a requirement as not to be thought of for a moment. It is not reasonable

to suppose that, had defendant given this warning to plaintiff, it would have had the effect claimed for it,—protected him.

Our conclusion upon the whole record is that the evidence relied upon is insufficient to charge defendant with actionable negligence. The questions on which we have disposed of the case at this time were not intended to be covered by the former decision. Some expressions in that opinion may be construed as announcing the law on certain phases of the case, but they were not so intended. But one question was there decided, and any expressions therein which may be inconsistent with the conclusions now arrived at must be regarded as obiter. Some members of the court, when the case was here before, were in some doubt upon the principal question now decided, but those doubts have been overcome fully by the further argument and consideration of the case, and we are all agreed upon the conclusion now reached.

The action has been tried several times. The facts are practically undisputed. The only claims of negligence relied upon by plaintiff in support of the verdict are those just pointed out, and for the reason that the failure of defendant in these respects is not sufficient to charge him with negligence within the rule of ordinary care and prudence, the case should be brought to an end, and further litigation and expense obviated by a final judgment.

It is therefore ordered that the order appealed from be reversed, and the cause remanded to the court below, with directions to enter judgment for defendant.