# WOAS, Appellant, v. ST. LOUIS TRANSIT COMPANY.

### Division Two, October 17, 1906.

1. **COMMON CARRIERS: Liability to Passengers: Criminal Trespass by Stranger.** A common carrier is not liable for injury to a passenger caused by a criminal trespass upon the car by a stranger unless the officers or servants of the company knew or had opportunity to know that the trespass was threatened or by the exercise of prompt intervention could have prevented or mitigated the injury.

2. ——: ——: ——: **Presumption of Negligence.** The presumption of negligence on the part of the carrier which arises in favor of a passenger from the mere fact of an accident, is applicable only when the injury to the passenger can be reasonably attributed to some defect in the track, cars or machinery or to some negligence in the movement of the train or in the conduct of those responsible for its movement.

3. ——: ——: ——: **Refusal to Stop Car for Passengers: Anticipating Injury.** Plaintiff was a passenger on defendant's street car, sitting on the second seat from the front, and as the car approached a crossing a person between the tracks (and not on the corner where persons contemplating passage were by ordinance required to be to stop cars) violently gesticulated, and as the car went by without stopping threw a stone at the motorman, which missed him, but crashed through the window, broke plaintiff's jaw and put out his eye, and he sues the railway company for damages. There was no mob or company of disorderly persons, and the assault was not aimed at plaintiff or other passenger, but at the motorman for not stopping the car. *Held*, that defendant, under the evidence, was not bound to anticipate the injury to plaintiff or that the stranger would commit the trespass.

4. ——: ——: ——: ——: **Evidence.** Evidence that prior to the accident certain persons had thrown missiles at defendant's cars on account of their failure to stop and allow passengers to board them, which has no limitations as to time and may refer to sporadic cases extending over years, is not competent as showing that defendant had notice that the trespass of the trespasser who threw the stone that injured plaintiff could, by the exercise of ordinary care, have been anticipated. Such evidence is entirely too indefinite as to time, and does not tend to show such a state of affairs as would bring home notice to defendant that an assault was contemplated.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Blevins,* Judge.

AFFIRMED.

*Warren D. Isenberg* and *F. R. Suits* for appellant.

(1)  The petition states a good cause of action under the law as laid down in the rule, and the proof supports the allegations.  It is alleged that the defendant could have readily foreseen the danger they were subjecting plaintiff to and also that the defendant's agents and servants took no steps to prevent the injury to plaintiff.  The proof supports this allegation. Clearly these two allegations state a good cause of action against defendant.  At another place in the petition it is alleged that the defendant's own act induced the act which resulted in the injury to plaintiff, and the proof supports the allegation.  If that be the case, then defendant must answer for the consequences.  The authorities seem to support our contention that if defendant could have reasonably anticipated the throwing of the missile and failed to protect plaintiff from the consequences thereof it will be liable.  5 Am. and Eng. Ency. Law (2 Ed.), 554; Connell v. Railroad, 93 Va. 44; Batton v. Railroad, 77 Ala. 501; Railroad v. Pillsbury, 123 Ill. 9; Dean v. St. Paul Union Depot Co., 41 Minn. 360; Railroad v. McKenna, 13 Lea (Tenn.) 280; Hutchinson on Carriers (2 Ed.), secs. 551a, 595, 596; Eads v. Railroad, 43 Mo. App. 542; Railroad v. Laloge, 62 L. R. A. 405; Spangler v. Railroad, 74 Pac. 607; Spohn v. Railroad, 87 Mo. 80; Sira v. Railroad, 113 Mo. 135; Sullivan v. Railroad, 133 Mo. 8; Jackson v. Railroad, 188 Mo. 200; Clark v. Railroad, 127 Mo. 208; Sweeney v. Railroad, 150 Mo. 385; Forbes v. Railroad, 116 Mo. 91; Meade v. Railroad, 68 Mo. App. 100; Wright v. Railroad, 4 Colo. App. 102; Winegor v. Railroad, 85 Ky. 553; Railroad v. Boyle, 42 S. E. 243; Bos-

worth v. Railroad, 55 Atl. 490; Fewings v. Mendenhall, 88 Minn. 336. (2) The court refused to permit plaintiff to show that, on account of the defendant's refusal to stop in accordance with law for passengers, defendant's cars had been repeatedly attacked and persons had been thereby injured; thus putting the company on notice of the danger it was subjecting its passengers to by reason of failure to stop. Railroad v. Dawson, 68 N. E. 910; Fewings v. Railroad, 55 L. R. A. 713; Exton v. Railroad, 56 L. R. A. 510; Ray, Neg. Imp. Duties, secs. 32-46; Railroad v. Baird, 54 L. R. A. 752; Seawell v. Railroad, 44 S. E. 610; Bosworth v. Railroad, 55 Atl. 490; Sanbuck v. Railroad, 71 Pac. 174.

*George T. Priest* for respondent; *Boyle & Priest* and *George W. Easley* of counsel.

(1) The court committed no error in directing a verdict for defendant. To hold this defendant liable it must first be shown that the plaintiff was injured as the result of a direct assault upon him while a passenger upon defendant's car; second, that defendant had reasonable grounds for anticipating that an attack would be made on plaintiff and had the means at hand to prevent it. We need look no further than the authorities in plaintiff's brief for citations in support of these principles. Connell v. Railroad, 93 Va. 44; Bratton v. Railroad, 77 Atl. 591; Railroad v. Pillsbury, 123 Ill. 9. (2) The liability of the defendant company in every instance rests upon grounds of negligence; that is, that its agents, foreseeing such circumstances and the probable result, would be negligent in failing to prevent it. (3) There is no evidence that the motorman or conductor in charge of the car in this case had any notice of an impending attack upon the plaintiff. There is no evidence that an attack was made upon the plaintiff, and that he was injured as a result of the said attack. The evidence is that the attack was made

upon and directed against the motorman, but its miscarriage resulted in an injury to the plaintiff. The verdict must be for defendant.

GANTT, J.—On the 3d of March, 1903, plaintiff filed in the circuit court of the city of St. Louis an amended petition, which in substance stated that on the 14th of April, 1902, the defendant was a public carrier of passengers for hire, and as such controlled and operated a street railway along and over Easton avenue in the city of St. Louis, a street running in an easterly and westerly direction, and on said day plaintiff took passage on one of defendant's east-bound cars at or near Clara avenue, and paid his fare, and was accepted as a passenger on said car. While plaintiff was a passenger on said car, the defendant, its agents and servants, failed and neglected to exercise such care and vigilance and caution as was their duty to do towards plaintiff, and was negligently, improperly and unlawfully conducting itself; that the plaintiff became exposed to great danger and in consequence of such negligence and unlawful conduct on the part of defendant, its agents and servants, was greatly and permanently injured in and about his face and on the right side thereof; that before the said car reached King's Highway, a street running in a northerly and southerly direction across said Easton avenue, some person took a position upon the track of the defendant upon which said car was running, and made violent and threatening motions at and towards the front of the car and at and towards the motorman in charge and running said car on which plaintiff was a passenger, and said motorman saw, or could have seen said person's threatening motions, attitude and conduct, and could have reasonably anticipated, in view of the circumstances, that the car was in danger of being attacked, and the passengers thereon liable to be injured, but notwithstanding said threatened danger, the said motorman

took no steps to prevent an attack upon said car and took no steps to protect the passengers thereon from said danger, but threw the power on said car in full force, and apparently tried to run over the said person on the track; that when the car was in close proximity to the said person on the track, the said person threw a rock or missile of some hard substance through the front of said car, and said missile struck the plaintiff in the face with great force and violence, permanently injuring the vision of his right eye and paralyzing some of the muscles on the right side of his face, whereby plaintiff has undergone and will undergo much pain and suffering, both mentally and physically, and caused plaintiff to pay out large sums of money for medicine, medical care and attention, and lose much time from his work; that there was in force and in effect at that time an ordinance which defendant was bound to obey, which provided that east-bound cars should be stopped on the east side of intersecting streets to take on passengers when requested, signaled or motioned by any person standing on said appropriate corner desiring to take passage on such cars. The petition sets forth the ordinance, section 1761 of article 6 of ordinance No. 19991 of the city of St. Louis, approved April 3, 1900, and it is further alleged that sections 1762 and 1772 of said ordinance provide a penalty for the violation of section 1761 for failing to stop said cars upon the request of persons desiring to take passage thereon. It is then alleged that a number of people waiting on the east side of King's Highway and on the south side of Easton avenue desiring to take passage on the car of which plaintiff was a passenger, signaled the motorman to stop said car so that they might take passage thereon, but the said motorman and servant therein in charge of said car failed, neglected and refused to stop the same; that the person who threw said missile was provoked thereto by the unlawful conduct of the de-

fendant, its agents and servants, in failing to stop said car at King's Highway; that the servants of the defendant then and there could have reasonably anticipated the happening of the said injury to the plaintiff; that at divers times and at sundry other occasions prior to the injury to the plaintiff, other persons had hurled missiles at the cars of the defendant on account of the failure of the servants of the defendant to stop said cars as required by said ordinance, and that such persons had been prosecuted for throwing missiles at said street cars; that plaintiff had been damaged in the sum of ten thousand dollars, for which he prayed judgment.

The answer was a general denial of each and every allegation in the petition. The cause was tried before the court and a jury on the 24th of November, 1903, and at the close of the evidence, the jury returned a verdict for the defendant. At the commencement of the trial the defendant objected to any testimony under the petition on the ground that it did not state facts sufficient to constitute a cause of action, and because the petition showed on its face that whatever injury was sustained by the plaintiff was due to the wrongful act of a stranger to the defendant, over whom defendant had no control whatever, and there was nothing in the pleading to render the defendant responsible for the wrongful act of the said stranger. The court overruled this objection and the defendant duly excepted. The plaintiff then offered to prove that prior to the 14th of April, 1902, missiles had been thrown at the cars of the defendant company on account of the failure of the defendant's servants to stop its cars and allow passengers to board the same and also to prove that prosecutions had been had against such persons for such unlawful conduct, all of which testimony the court excluded at the request of the defendant, to which action of the court the plaintiff excepted. Plaintiff next

offered in evidence section 1761 of the Municipal Code of St. Louis, which was pleaded in the petition, and also section 1762, providing a penalty for a violation of section 1761, and also the acceptance of the provisions of said ordinance by the defendant company.

The plaintiff in his own behalf testified that he was a linotype operator and that on the 14th of April, 1902, he took passage on an east-bound Easton avenue car about a quarter to six, to go to his work. He paid his fare and took his seat on the right side of the car fronting east on the second seat from the front of the car; that when the car approached King's Highway he noticed a man standing in the middle of the street with something in his hand making violent motions towards the car. The motorman was standing on the platform in front of the car handling his motor. The next thing that the plaintiff remembered was he was on the operating table, and the doctor was taking the glass and broken bones out of his face and teeth. He testified to the wages he was earning before he was hurt and to the amount of his physician's bills and to the length of time he lost from his work on account of the injury. He did not see the man throw anything, he only knew that when he came to his senses, he was on the operating table in Dr. Parker's office.

Dr. Rice testified to the serious nature of the plaintiff's injuries; that when he reached the plaintiff, at Dr. Parker's office, Dr. Parker had already bandaged him up and sent him home. The cheek bone was fractured and the muscles were partially paralyzed, so he could not close his jaws.

John Jaeck testified that he was a member of the police force and saw a person throw something on the evening of the 14th of April, 1902, at an Easton avenue east-bound car near King's Highway. He could not swear that it was a rock, but whatever the missile was, it struck the vestibule and broke the pane of glass in

front of the vestibule, but whether it struck any person or not he could not say.

This was the substance of the plaintiff's evidence. The court at the request of the defendant instructed that, under the pleadings and the evidence, the plaintiff was not entitled to recover, and thereupon the jury returned the verdict for the defendant. Within four days plaintiff filed his motion for a new trial, alleging, among other things, error on the part of the court in refusing competent evidence on the part of the plaintiff and in sustaining the demurrer to the evidence, which motion was by the court overruled and the plaintiff excepted.

Two grounds are assigned for a reversal of the judgment, the principal of which is, that the court erred in not submitting the case to the jury upon the evidence, and the second is the refusal of the court to permit the plaintiff to show that on account of defendant's refusal to stop its cars in accordance with the ordinance various persons had made attacks upon the cars by throwing missiles at them.

I. In support of this first contention plaintiff invokes the law as to the duty of the carrier of passengers to protect its passengers.

A carrier of passengers is required to exercise the highest degree of care in respect to the equipment of its road and transportation facilities, in providing suitable machinery in the operation of its cars, in the employment of competent and faithful servants and agents, and generally, as to all acts pertaining in any way to the conduct of its affairs in furtherance of its undertaking as a carrier. In respect to these matters, the rule in this State has always held such carriers to a strict accountability. It will be readily seen from the accompanying statement that both the petition and the evidence demonstrated that the act which resulted in the plaintiff's injury, in this case, was not committed

by an employee or a fellow passenger, or by any one having any connection or relation whatever with the company, but by a stranger over whom the defendant had no control whatever. It is insisted by the plaintiff, however, that it was the duty of the defendant, in view of the fact that other persons had committed criminal trespasses by hurling stones at the cars of the defendant, to have exercised the utmost care and vigilance to guard and protect the plaintiff while a passenger on this car from acts of violence at the hands of evil-disposed persons, whether under the control of the defendant or not, and that the act of the man who threw the missile which struck the plaintiff could have been reasonably anticipated by the defendant's motorman and could have been guarded against and prevented.

In Batton and Wife v. Railroad, 77 Ala. 591, it was held that while it is the duty of a railroad company as a common carrier to protect its passengers against violence or disorderly conduct on the part of its own agents or other passengers and strangers when such violence or misconduct may be reasonably expected and prevented, yet it is not liable in an action for damages for a wrong when it is not shown that the company had notice of any facts which justify the expectation that a wrong would be committed, and the court in its opinion says that all the cases upon the subject "impose the qualification that the wrong or injury done the passenger by strangers must have been of such a character as that it might reasonably have been anticipated, or naturally expected to occur." And this statement of the rule has been approved by this court in Sira v. Railroad, 115 Mo. 1. c. 135 and 136, and in Connell v. Railroad, 93 Va. 44. And it is quite generally ruled by the courts of this country that the liability of the defendant carrier in such a case grows not out of the fact that the passenger was injured, but out of the failure of the carrier's servants to afford protection

after they have reasonable grounds for believing that violence to the passenger is imminent, and it is necessary therefore in all such cases to bring home to the conductor or other agent or officer of the company knowledge or opportunity to know that the injury was threatened and to show that by his prompt intervention he could have prevented or mitigated it. [Railroad v. Burke, 53 Miss. 200; Britton v. Railroad, 88 N. C. 536.] It is clear in this case that the burden of showing negligence was upon the plaintiff and that the presumption of negligence which arises in favor of the passenger traveling on a train from the mere fact of an accident has no application to a case like this. Such a presumption only arises where the injury can be reasonably attributed to some defect in track, cars or machinery or the movement of the train or the conduct of the servants in charge thereof.

In Railroad v. Hummell, 44 Pa. St. 375, it was said: "If the law declares, as it does, that there is no duty resting upon any person to anticipate wrongful acts in others, and to take precaution against such acts, then the jury cannot say that a failure to take such precaution is a failure in duty and negligence. . . . Were it worth while, abundant authority might be cited to show that the law does not require any one to presume that another may be an active wrongdoer. . . . It is too well founded in reason, however, to need authority. We act upon it constantly, and without it there could be no freedom of action." In Fredericks v. Railroad, 157 Pa. St. 103, a passenger was injured by the criminal action of certain parties breaking the locks of a switch and uncoupling cars which stood on a sidetrack and causing loaded coal cars to run out on the main track with which plaintiff's car collided, and it was held by the Supreme Court of Pennsylvania that the company was not liable for these malicious acts of a

stranger of which it had no notice. To the same effect is a decision in Deyo v. Railroad, 34 N. Y. 9, in which a train was thrown from the track through the culpable act of some unknown person who maliciously drew the spikes which fastened the chairs and the rails whereby a passenger was injured.

In Curtis v. Railroad, 18 N. Y. 534, it was said: "If obstructions are placed, by strangers, upon the road, either through accident or design, the company is not responsible for the consequences, unless its agents have been remiss in not discovering them."

In Railroad v. MacKinney, 124 Pa. St. 462, it appeared that the plaintiff was a passenger on the defendant's train and while reading a newspaper in his seat at an open window, was struck in the eye by a hard substance and seriously injured. On the trial, the court below instructed the jury that they should start with the presumption that the defendant was guilty of negligence from the mere happening of the accident, and that it therefore devolved upon the defendant to rebut that presumption and show it was not negligence. The Supreme Court held that this instruction was erroneous because the accident occurred from something extraneous to the railroad and the appliances of travel, and that it was necessary for the plaintiff to go further and affirmatively prove that there was negligence. The court pointed out the difference between an accident resulting from the mere operation of the road and one which was the result of some extrinsic cause. In the former the presumption of negligence arose from the mere happening of the accident, in the latter no such presumption arose and the fact of negligence for which the defendant was responsible must be proven by different testimony, just as in any ordinary case between strangers.

The foregoing cases sufficiently indicate the principles which must govern in the decision of this case.

It being conceded that plaintiff's injury resulted from
the unlawful wanton and wicked act of a stranger over
whom defendant had no control, was there anything
in the evidence which would justify the circuit court
in submitting to the jury whether the defendant could
have reasonably anticipated that this stranger would
have hurled the rock or other missile into the car where
plaintiff was seated, in time for the defendant's motor-
man to have taken steps to have prevented it? While
plaintiff urges in his petition that the party who threw
the stone stood on the track on which defendant's car
in which plaintiff was riding was moving, the plain-
tiff's evidence clearly shows that this party was not on
the track, but stood between the east- and west-bound
tracks, and not on the corner where a passenger was
authorized to hail the car to stop. It is too plain for
argument that the motorman was under no obligation
to stop the car for a party not at the proper point.
There is not the slightest pretense that this motorman
had any reason to expect this party to be on the track
at this place until his car approached him, nor is there
the slightest evidence that he had any right to antici-
pate that this stranger would violate the law by throw-
ing a deadly missile at the motorman.

The question at bar has been so recently and ably
discussed by the Supreme Court of Minnesota in the
case of Fewings v. Mendenhall, 88 Minn. 336, that we
quote from that case the conclusions of law applicable
to the facts before us. We premise our quotation, how-
ever, by remarking that in this case there was no mob
or other circumstances which characterized the Minn-
esota case. The defendant in that case was the receiver
of the Duluth Street Railway Company and as such was
operating the road: ''On May 2, 1899, a general strike
was inaugurated by the employees of the company,
which was maintained until after the plaintiff was in-
jured, as hereinafter stated. The defendant procured

other men to take the places of the strikers, and continued to operate the street car lines. On Sunday evening, May 7, the plaintiff took passage in the car operated by defendant, at Superior, in the State of Wisconsin, for Duluth. While the car was going northerly along Garfield avenue in Duluth, and as it approached Michigan street, a young man, not in any way under the control or direction of the defendant, threw a stone at the car in which plaintiff was so riding, which passed through the window, and struck the plaintiff on the head, whereby he was seriously injured.'' Plaintiff sued the receiver and based his right to recover on the alleged negligence of the defendant in failing to take proper precaution to prevent injury from acts of that kind. It was held that the defendant was not guilty of negligence in attempting to operate the cars during the strike. Said the court: ''It is insisted that the act of the boy who threw the stone in question was such as the defendant might, from the circumstances and conditions of the strike, have reasonably anticipated, and could have guarded against and prevented. We have been cited to no case where the high degree of care essential as to matters within the control of the carrier has been extended and applied with all its force and strictness to acts of persons beyond its control, and for which it was in no way responsible, directly or indirectly. Some cases cited and relied upon by plaintiff do not sustain his position.'' The court then reviewed a large number of cases and showed that they had no application to the question under discussion, and then proceeded as follows: ''A number of other cases are cited and relied upon by counsel, wherein the general rule is stated substantially as contended for by him, namely, that a carrier of passengers is required to exercise the unmost vigilance to protect passengers from insult and injury from whatever cause arising; but an examination of them shows that they are all cases where the carrier

had permitted third persons to enter upon its premises or cars, and thereafter failed to exercise a proper degree of care to restrain them from acts of lawlessness; and there can be no question as to their soundness. The question before us is whether this strict rule applies to the act of a stranger, such as here shown. That it does not is sustained by some very respectable authorities. [Tall v. Baltimore Steam Packet Co., 90 Md. 248, 44 Atl. 1007; Railroad v. MacKinney, 124 Pa. St. 462; Railroad v. Pillsbury, 123 Ill. 9.] In our opinion it would be unjust to require a carrier of passengers, either a steam or a street railway company, to exercise the utmost care and vigilance to guard and protect passengers from criminal acts of strangers, persons not under its control or subject to its orders, and for whose acts it is in no way responsible. And we hold, without further discussion, as respects the acts of such strangers, that carriers of passengers are liable for the exercise of ordinary care and prudence only. Such carrier is liable for all injuries resulting from the acts of strangers which are reasonably to be anticipated under the particular circumstances, and which ordinary care and prudence, had they been exercised, would have prevented. ` . . . The familiar rule that evidence of an accident is prima-facie proof of negligence against the carrier can have no application to this case, because the act resulting in the injury did not arise from any act or omission of the defendant. The presumption of negligence in such cases arises only where the thing causing the injury complained of was under the exclusive control of the carrier or its servants or employees. The act complained of here being that of a stranger, it was incumbent upon plaintiff affirmatively to prove that defendant failed to exercise proper care to prevent it. The question arises whether the evidence was sufficient to charge the defendant with negligence in this respect." The court then discussed

the two theories advanced by the plaintiff, one was that
the defendant might have protected the plaintiff by
stretching a heavy canvas over the windows outside
of the car, or have caused its leather curtains to have
been pulled down. The other was to have informed the
plaintiff that violent and lawless acts were being com-
mitted by the strikers and their sympathizers. The
court held that ordinary care did not require of the
defendant to take doubtful or unreasonable precaution
to guard against the lawless acts of strangers, and that,
as to the duty to notify the plaintiff of the violent con-
duct of some of the strikers, plaintiff was bound
to know of those things as much as the defendant and
it was unreasonable to suppose that had defendant
given plaintiff this warning it would have had the ef-
fect of protecting him, and the court held that upon the
whole record the evidence was insufficient to charge the
defendant with actionable negligence.

Another leading case on this subject is that of
Railroad v. Pillsbury, 123 Ill. 9. In that case a railroad
company stopped at a place not a usual stopping place
and took aboard laborers who had taken the place of
some strikers. The police guarded the laborers until
they entered the train. When the train stopped at a
railroad crossing, a mile and one-half beyond, it was
boarded by a mob, who attacked the laborers as scabs
and shot the plaintiff, a passenger on the train at the
time. Scott, J., speaking for the majority of the court,
said: "With regard to danger and hazard to travel
arising otherwise than on the train, and not incidents
of such travel, the degree of care to be observed to dis-
cover and prevent all danger to and consequent injur-
ies to passengers, must depend in a large measure on
the attendant circumstances. No doubt in many cases,
if the carrier observes ordinary care and diligence to
discover and prevent injury to passengers, such as any
prudent person would do for his own personal safety,

it will be exonerated from liability. In other cases and under other circumstances it will, no doubt, be the duty of the carrier to exercise the utmost care, skill and diligence to protect the passengers from danger and injury, so far as the same, by the exercise of such care and skill and diligence, could have been reasonably and practicably foreseen and anticipated in time to prevent injury. . . . . Prior to the time the plaintiff was injured, the box cars containing these laborers had been assailed, and it might reasonably have been inferred that danger to passenger cars on the same account was imminent, and common prudence should have induced the taking of extraordinary precautionary measures. . . . Under the circumstances, the law would charge defendant with negligence in stopping a train filled with passengers, in the midst of a howling, revengful, lawless mob, to take on persons whom the mob were seeking an opportunity to maltreat. . . . Defendant ought reasonably to have anticipated the mob might attack its train to reach the object of their vengeance, so soon as it had passed from the protection of the police, and precautionary measures should have been taken. . . . The verdict is a sufficient warrant for the conclusion that reasonable precautions were not observed." MAGRUDER, J., entered a most vigorous dissent from the conclusions reached by the majority. It is to be observed that in this case the opinion of the majority of the court is predicated upon the fact that the circumstances themselves charge the defendant with notice of the danger to its passengers from an attack of a mob of strikers, and the duty of the carrier under such circumstances to exercise that skill and diligence commensurate with the threatened danger.

In both of the cases last cited, it is to be observed that the plaintiffs proceeded upon the theory that the carrier was advised of the danger to its passengers and failed to exercise the proper care for their protect-

ion. It is obvious that the facts of the case at bar are wholly dissimilar from those two cases, in that in this case there was a total absence of any mob or other public disturbance, which would of itself indicate to the defendant any danger to its passengers on the car on which plaintiff was riding. Here the act which caused the injury was the wanton unlawful act of one man who had assumed to himself the prerogative of punishing the motorman for not stopping the car where he thought it ought to be stopped.

In the Fewings case, and in the Pillsbury case, the assaults were aimed at the passengers on the cars and not merely at a motorman or engineer. It was the threatened injury to the passengers and notice thereof upon which those actions were grounded. In this case it is not pretended that the motorman had any notice of any impending attack upon the plaintiff or the other passengers, nor was any attack made directly upon the passenger, but the attack was directed solely against the motorman, and it was only because of its miscarriage that plaintiff was injured. All the evidence shows that the attack was made with the sole intention and purpose of injuring the motorman, and to hold that the defendant under this evidence was bound to anticipate injury to its passengers, would be contrary to reason and common sense. The motorman was standing alone in the vestibule controlling the action of his car, and it would be utterly unreasonable to hold that he could reasonably anticipate that a person attempting to strike him would inflict injury upon the passengers in the coach. As already shown by the authorities cited, the motorman was not bound to anticipate that this stranger, who was hailing his car, would be guilty of a criminal assault upon himself or upon his passengers. The circumstances in evidence did not indicate any purpose on the part of this lawless offender to maltreat the passengers on that car. That carriers

of passengers are not liable for injuries caused by mis-
siles thrown by strangers which they have no right to
anticipate, is established by a large number of well-
considered cases. [Railroad v. MacKinney, 124 Pa.
St. 462; Fewings v. Mendenhall, 88 Minn. 336; Thomas
v. Railroad, 148 Pa. St. 180.] Knowledge of the exist-
ence of the danger or of facts and circumstances from
which danger may be reasonably anticipated is neces-
sary to fix the liability of the carrier for damages sus-
tained in consequence of failure to guard against it.

In view of the foregoing legal principles and the
evidence in this case, we think the circuit court cor-
rectly sustained the demurrer to the evidence, as the
plaintiff wholly failed to bring himself within any rule
of law which would render the defendant liable for the
assault of the person made upon its motorman.

II.  The only remaining ground is that the court
excluded certain evidence offered by the plaintiff to
show that prior to the 14th of April, 1902, certain per-
sons had thrown missiles at the defendant's cars on
account of their failure to stop and allow passengers to
board the car. It is obvious that the evidence sought
to be adduced had no limitations whatever save that
missiles were thrown at the defendant's cars at some-
time prior to April 14, 1902. The questions asked would
have permitted the witnesses to have told of sporadic
cases of the throwing of missiles at defendant's cars
during a period extending over years prior to the 14th
of April, 1902.  Moreover, the question did not indicate
that such conduct was by any means general or of such
frequency as to indicate that it would be repeated on
the occasion on which plaintiff was hurt.

The evidence sought to be elicited was entirely too
indefinite to be of any probative effect whatever. We
are cited to the case of Railroad v. Dawson, 68 N. E.
909, from the Appellate Court of Indiana. The evi-
dence offered in this case falls far short of the testi-

mony which was ruled competent in that case. We think the court committed no error whatever in excluding the testimony for the reason that it was entirely too indefinite as to time and for the further reason that it did not purport to show any such state of affairs as to bring home notice to the defendant of any danger to the plaintiff of the assault by which he was injured.

The judgment of the circuit court must be and is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.