KNOXVILLE CAB CO. *et al. v.* MILLER.

(*Knoxville*, September Term, 1939.)

Opinion filed April 6, 1940.

Poore, Kramer & Cox, of Knoxville, for plaintiffs in error.

Ely & Ely, of Knoxville, for defendant in error.

Mr. Justice DeHaven, delivered the opinion of the Court.

This suit was instituted by Jack K. Miller, a minor about 12 years of age, by his mother, Mrs. Nora Miller, seeking to recover from the Knoxville Cab Company and its manager, R. P. Patterson, damages for personal injuries received by him while riding in a taxicab belonging to the cab company.

On the trial of the case, defendants moved for a directed verdict in their favor. This motion was sustained as to defendant, R. P. Patterson, but was overruled as to the cab company. The jury returned a verdict in favor of plaintiff for $500. The Court of Appeals affirmed the action of the trial judge in directing a verdict in favor of Patterson and reversed the judgment against the cab company, holding that no actionable negligence had been shown, and granting the motion for a directed verdict in the company's favor and dismissed plaintiff's suit.

Plaintiff has filed a petition for *certiorari* to this court and assigned errors.

On July 30, 1938, the plaintiff with his mother and sister, after having attended a moving picture show, ordered a taxicab to take them home with a special request that Mr. Miller, the father of plaintiff, who was a regular driver for the cab company, be sent. They boarded the cab near the intersection of Gay Street and Wall Avenue. The plaintiff sat on the front seat beside his father. The cab started west along Wall Avenue and while near the intersection of Wall Avenue and Market Street some person hurled a stone or heavy object through the right window of the cab striking plaintiff on the right side of the head, injuring his ear and scalp and he remained in a hospital eight or ten days.

About July 1, 1938, some labor dispute arose between the cab company and its drivers, as the result of which all but nine of the drivers went out on a strike. New drivers were employed and at the time of the incident here involved most of the cabs were in operation.

In the early stages of the strike some acts of violence had been committed by striking drivers or their sympathizers, but at no time had any passengers been injured, and for several days prior to July 30th no acts of violence had been committed.

Plaintiff bases his claim for damages upon the insistence that it was negligence on the part of defendant to operate its taxicabs for hire upon the streets under the conditions alleged.

█ It appears that Mr. Miller, the driver of the taxicab, was especially fond of his son. There is nothing to show that Mr. Miller failed to exercise a high degree of care for the safety of his wife and son. He did not testify upon the trial and it must be assumed that his testi-

mony, had he testified, would have been favorable to defendant.

There is nothing to show that there was any peculiar risk incident to the operation of cabs at the time and on the particular street where plaintiff was injured. Mr. Miller was driving his wife and son home and it could well be inferred that he selected the safest route.

Though not averred in the declaration, it is insisted that the company should have had a guard on the taxicab. But, there is no proof from which it could be inferred that a guard in the cab could have seen the assailant so as to prevent the injury. It is also argued, but not averred in the declaration, that the company should have had screens on the windows of the cab against the possibility of missles being thrown.

A carrier of passengers is not an insurer of the safety of its passengers, but it is held to the exercise of the highest degree of care and foresight for the passenger's safety. This applies to the selection and use of suitable carriages, motive power, appliances and servants, as well as to the proper construction and maintenance of the roadbed and tracks. *Nashville & C., Railroad Co.* v. *Elliott,* 41 Tenn. (1 Cold.), 611, 78 Am. Dec., 506; *Memphis St. R. Co.* v. *Cavell,* 135 Tenn., 462, 187 S. W., 179, Ann. Cas., 1918C, 42.

In *Railroad Co.* v. *Kuhn,* 107 Tenn., 106, 115, 64 S. W., 202, 204, it is said: "The mere fact of an injury suffered by a passenger while on his journey, without any evidence connecting the carrier with its cause, is not sufficient to raise a presumption of negligence on the part of the carrier. But proof of injury suffered from contract (contact) with anything for which the carrier was responsible, or which, as a general rule, he ought to have guarded against, or from the absence of anything which, as a

general rule, he ought to have supplied, is sufficient to put him upon his defense."

In *Fewings* v. *Mendenhall*, 88 Minn., 336, 93 N. W., 127, 130, 60 L. R. A., 601, 97 Am. St. Rep., 519, it was insisted that the street railway company, during a strike, should have pulled down the shades in the car and stretched canvass across the windows outside the car. The court said, "We are of the opinion that the failure to do this is not sufficient on which to base a recovery." The court pointed out that such precaution would have provoked the strikers to acts of greater violence. In *Missimer* v. *Philadelphia & R. R. Co.*, 17 Phila., Pa., 172, it was insisted, under a specific count of the declaration, that it was the duty of the railway to screen its car windows effectually, not against the negligence of its passengers, but against missiles that might be thrown from the outside by persons over whom the railway had no control. The court said: "No authority has been shown us for the legal implication of any such duties. The practical difficulties would be considerable, and in cases of collision or other accident the dangers of having the windows effectually barred might be far worse than the danger of injury from an occasional missile."

The declaration does not aver that the locality where the rock was thrown was one where repeated acts of that nature had occurred. Mrs. Miller and the boy had full knowledge that a strike was on, and, of course, Mr. Miller, the father of the boy, was acquainted with the whole situation.

*Certiorari* is denied.