## Louisville Ry. Co. v. Logan.

November 21, 1947.

Eugene Hubbard, Judge.

36

John E. Tarrant, Earl S. Wilson and Watson Clay (Ogden, Tarrant, Galphin & Street of counsel), for appellant.

Carl K. Helman for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellee, Anna Mae Logan, has recovered a judgment for $3,742 for injuries received by her while a passenger on a bus of appellant. The principal ground urged for reversal of the judgment, and in view of our conclusions the only ground necessary for us to consider, is the asserted error of the trial court in overruling appellant's motion for a peremptory instruction to find for it.

Mrs. Logan, while a passenger on one of the Railway Company's buses, was injured by a half brick thrown by someone on the street or sidewalk. A strike by a portion of the Company's employees was in progress at the time the incident occurred. The strike was called on the morning of March 8, 1946, but a large number of employees refused to join the strikers and about 40% of the Company's buses were operated during the day. As a precautionary measure, operation of buses

was suspended at 6 p. m., March 8, and resumed at 6 a. m., March 9. During March 8 there were a few sporadic cases of vandalism, such as cutting trolley ropes, but no acts of violence. There was a radio discussion of the strike on Friday afternoon by the principals involved, in which their respective views were presented to the public. The attorney for the Railway Company stated in the broadcast that the mayor of Louisville had given assurance of adequate police protection, and the speaker assured the public that reasonably normal service, as compared to that day's curtailed service, would be restored. The representative of the strikers assured the public over the radio that there would be no violence. When operations were resumed on Saturday morning, officials of the Railway Company drove about the city for the purpose of ascertaining whether the buses were being operated without molestation. They observed no disorder and saw no crowds except at the carbarn where picket lines had been established. The bus which appellee later boarded left the carbarn at 6:20 a. m. on Saturday morning, and made a complete trip on its regular route without any untoward incident. On its second trip Mrs. Logan boarded it about 8:40 a. m. at 28th Street and Broadway. The bus was crowded, but she obtained a seat in the front of the bus on the right-hand side of the driver where she had a clear view. The bus proceeded north on 28th Street toward the intersection of 28th and Magazine Streets, its next scheduled stop. Magazine Street is one block north of Broadway where appellee boarded the bus, but Elliott Street intersects 28th Street between Broadway and Magazine Street. The appellee testified that she saw no crowd at the intersection of Magazine and 28th Streets or at the intersection of Elliott and 28th Streets when she boarded the bus at Broadway, and that she noticed nothing out of the ordinary until the bus was within a few feet of Magazine Street where she saw about 25 men on the corner. It is obvious that she meant Elliott instead of Magazine Street, since all the evidence shows that men were congregated at the intersection of Elliott and 28th Streets, and the brick was thrown at that point. She described the actions of these men as follows: ''I noticed these men on the corner, and they were yelling and screaming and using very

vile language and threatening the driver. They had bricks and clubs in their hands.''

She also testified that she identified the men as employees of the Railway Company as they had on uniforms and heard them tell the driver they were going to throw a brick through the window if he went through. She stated that the driver paused for an instant and then continued on, whereupon a brick thrown through the windshield of the bus struck and injured her. She said that they were at the carbarn when she regained consciousness about 30 minutes later, and she heard the bus driver say he knew there was going to be trouble because a brick had been thrown through the window previously. On cross-examination she admitted that her deposition had been taken on July 27, 1946, prior to the trial in October, and that she stated on that occasion that she didn't know where the bus driver went after the brick was thrown; that only 8 or 12 persons were on the street at the place where she was injured; and that she didn't know what they were saying, but assumed they were calling the driver names.

Stanley C. Larsgaard, driver of the bus, said that he made one round trip on Saturday morning without molestation, and on his second trip saw three men with their hands up as the bus reached Elliott Street. He testified: ''My first impulse was to stop, and the second was to go on. Well, I stepped on the bus and I moved away, and as I got to them a brick came through the windshield * * *.''

Asked why he did not stop, he said: ''Well, there was no sense in stopping and letting them come up to me and throw bricks * * * then they could sure hit who they were aiming at. It is always easier to hit something that is setting still than when it is moving; so I kept on moving * * *.''

He said there were only three men at the intersection of Elliott and 28th Streets and they did not say anything, but held up their hands as if wanting him to stop.

An effort was made to show that other acts of violence and lawlessness had occurred on Saturday morning previous to appellee's injury at 8:45 a. m. Nor-

man D. King, a bus driver, testified that about 6 a. m. at the intersection of 20th and Market Streets some men threw rocks at the door of his bus, but did not break the glass. He identified them, and they were arrested and placed in jail. There were two other cases of brick throwing, one from a passing automobile, but the time of these occurrences is indefinite. At least one of the acts was committed at or about the time Mrs. Logan was injured, or just a few minutes before, and in a different section of the city.

There was proof that one hour and 45 minutes would be required to get notice to the buses and get them off the streets. Certainly there was no evidence that at the time the bus in question left the carbarn on its second trip there was anything to indicate that its driver would be assaulted by ruffians and criminals and the lives of its passengers endangered, or that such criminal conduct could have been reasonably anticipated by appellant. As to the instrumentalities and persons under its control and the operation of its vehicles, a carrier is under a duty to exercise the highest degree of care toward its passengers, but it is not an insurer of their safety. However stringent the degree of care imposed upon a carrier may be, it is not liable for the wrongful acts of third persons whose conduct could not have been reasonably anticipated. Schooler v. Louisville & I. R. Co., 259 Ky. 80, 82 S. W. 2d 221; England v. Kinney, 272 Ky. 32, 113 S. W. 2d 838; Riley v. Louisville & N. R. Co., 231 Ky. 564, 21 S. W. 2d 990; Louisville R. Co. v. Dott, 161 Ky. 759, 171 S. W. 438, L. R. A. 1915C, 681. In each of the following cases from foreign jurisdictions the facts were very similar to the facts in the instant case, and it was held that the carrier was not liable for the injury to a passenger; Fewings v. Mendenhall, 88 Minn. 336, 93 N. W. 127, 60 L. R. A. 601, 97 Am. St. Rep. 519; Bosworth v. Union R. Co., 26 R. I. 309, 58 A. 982, 3 Ann. Cas. 1080; Woas v. St. Louis Transit Co., 198 Mo. 664, 96 S. W. 1017, 7 L. R. A., N. S., 231, 8 Ann. Cas. 584; Knoxville Cab Co. v. Miller, 176 Tenn. 88, 138 S. W. 2d 428. The mere fact that a brick was thrown through the windshield of the bus does not, of itself, show that the Railway Company was at fault. When regard is had to the facts and circumstances shown by the evidence, it is clear that the lawless act

was an occurrence that could not reasonably have been anticipated. As said, in substance, in Knoxville Cab Co. v. Miller, supra, there is nothing to show that there was any peculiar risk incident to the operation of buses at the time and on the particular street where appellee was injured. It was the duty of the appellant, under its franchise, to operate its buses for the convenience of the public as long as it was practically possible, and nothing had occurred which would have warranted a discontinuance of the service. We find no evidence of negligence prior to the arrival of the bus at the intersection of 28th and Elliott Streets.

Was the driver of the bus negligent in continuing on under the circumstances? If so, his negligence is chargeable to appellant. The driver had the choice of stopping or continuing on. He was confronted by a sudden emergency which demanded immediate action on his part, and he concluded that it would be more dangerous to himself and the passengers if he stopped than if he continued on. What the result would have been if he had stopped is a matter of pure speculation. Under the circumstances, it cannot be said that his choice constituted negligence. Louisville & N. R. Co. v. Henry's Adm'r, 252 Ky. 278, 66 S. W. 2d 818; Chesapeake & O. R. Co. v. Harrell's Adm'r, 258 Ky. 650, 81 S. W. 2d 10; Lyons v. Southeastern Greyhound Lines, 282 Ky. 106, 137 S. W. 2d 1107. In Louisville & N. R. Co. v. Wright, 193 Ky. 59, 235 S. W. 1, 2, the rule is stated as follows: "The failure to exercise the best judgment in an emergency is not evidence of negligence, though the error be fraught with lamentable results, as one acting in a sudden crisis is not required to exercise that deliberate judgment which time for reflection affords. Whether the one or the other method should have been adopted by the engineer in trying to relieve appellee of his situation was, under the circumstances, a matter for the exercise of the engineer's judgment. For an error in its exercise neither he nor appellant is responsible."

It follows that the trial court erred in overruling appellant's motion for a peremptory instruction to find for it, and the judgment is reversed for proceedings consistent herewith.