witnesses for the defendant were permitted to give evidence of the fact that the defendant had some time previously laid out the premises between the highway and the railroad into lots, and that these lots had a certain value per lot, somewhat contingent upon the statement of some of the officers of the defendant company that it was intended to create an artificial lake in the places where the excavations above noted had been made. It is true, of course, that evidence has been held incompetent where it has been sought to show what property might realize in rentals with important improvements made thereon; but this case does not seem to come within the condemnation of that rule. Here the defendants had a right to show the highest utility of the premises—had the right to point out its adaptability for village lots and the possibilities of its improvement, not for the purpose of showing the value of the lots with the improvement made, but to show with the opportunities for improvement the present market value.

[5] Assuming that, strictly speaking, the evidence was open to objection, in that it introduced some element of speculation, still the award does not show any considerable evidence of having been affected by the testimony of the experts. The lowest estimate of any of the experts fixes the damages at approximately $3,000, and the others range very much higher, while the award is only $2,500. Assuming, then, that the experts took into consideration the proposed lake—and their testimony merely goes to the length of showing that they had the possibilities of such a lake, as bearing upon the value, in mind— it could hardly have influenced their judgment to the extent of $500 or more in the matter of damages, and this much approximately has been deducted by the commissioners from the estimate of the lowest of the experts in making their award. The commissioners, viewing the property and charged with the duty of awarding just compensation, are not shown to have entertained any erroneous theories in reference to the matter. There is nothing to indicate that the amount of the award has in any manner been increased by the so-called speculative testimony, and we discover no reason why the order appealed from should not be affirmed.

The order appealed from should be affirmed, with costs.

JENKS, P. J., and RICH, J., concur. THOMAS and CARR, JJ., dissent, on the ground that the award is excessive, and also upon the ground that the evidence of the experts is based upon assumptions of fact not proven.

---

DAYMON v. WESTCHESTER ST. R. CO.

(Supreme Court, Appellate Division, Second Department. January 24, 1913.)

1. APPEAL AND ERROR (§ 215*)—REVIEW—ESTOPPEL TO ALLEGE ERROR.

In an action for ejection from a street car for failure to pay a second fare demanded, where the court charged at defendant's request that if the defendant charged two fares on the advice of counsel that it had the legal right to do so, and believed in good faith that it was authorized to do so, and the conductor believed that it was his duty to collect a sec-

ond fare, there was no intentional offense, and plaintiff could only recover compensation, and also charged at plaintiff's request, with the consent of defendant, that if the defendant expressly authorized its conductor to eject passengers for refusing to pay a second fare, and in so doing acted with malice, the jury may consider this by way of awarding plaintiff smart money or exemplary damages, the acquiescence of the defendant in the latter charge amounts to a concession that there was some evidence from which the jury might find the facts suggested.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1309–1314; Dec. Dig. § 215.*]

2. CARRIERS (§ 382*)—EJECTION OF PASSENGER—DAMAGES.

The fact that a carrier acts on the advice of counsel in ejecting a passenger for refusal to pay a second fare goes only to the mitigation of damages, and not to the right to recover exemplary damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1478, 1483–1491; Dec. Dig. § 382.*]

3. CARRIERS (§ 382*)—EJECTION OF PASSENGER—DAMAGES.

That a conductor, in ejecting a passenger who had paid all that the law required him to pay, acted in good faith and in the honest belief that the passenger was not entitled to further transportation without additional fare, does not affect the right to compensatory damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1478, 1483–1491; Dec. Dig. § 382.*]

4. CARRIERS (§ 382*)—EJECTION OF PASSENGER—DAMAGES.

The right of a passenger, wrongfully ejected for failure to pay a second fare, to compensatory damages, includes compensation for loss of time and the amount the passenger was obliged to pay for passage on another car, and also suitable recompense for injuries to his feelings.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1478, 1483–1491; Dec. Dig. § 382.*]

Jenks, P. J., dissenting.

Appeal from Westchester County Court.

Action by William D. Daymon against the Westchester Street Railroad Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

William Greenough, of New York City, for appellant.
William L. Rumsey, of White Plains, for respondent.

WOODWARD, J. The plaintiff, a real estate dealer, became a passenger upon one of the defendant's cars on the 12th day of August, 1910, intending to travel from Mamaroneck to White Plains. He paid a 5-cent fare, which was the amount lawfully due from him for the continuous trip to White Plains, though at the time the defendant company was insisting that it had a right to exact two fares of 5 cents each from all passengers, under the terms of a franchise which had been superseded by the one in use at the time this action arose. When the plaintiff had proceeded about half way to White Plains, he was approached by the conductor, who demanded a second fare of 5 cents. This the plaintiff refused to pay, and he was ejected from the defendant's car. It appears from the evidence that but little force

was used, yet there was some force applied to the person of the plaintiff; both the conductor and motorman participating. Plaintiff waited for a second car, became a passenger thereon, and continued his journey to White Plains, having been delayed about 20 minutes. Later in the day he became a passenger on another of the defendant's cars to return to his home in Mamaroneck, and was again ejected from the car for refusing to pay a second fare. This time he walked to his home. This case involves the two causes of action, and the jury has awarded a verdict of $500; the defendant appealing to this court from the judgment entered upon such verdict.

[1] The learned court charged the jury at the request of defendant's counsel that:

"If the evidence shows that the defendant charged and collected 10 cents for a continuous ride between White Plains and Mamaroneck, in either direction, upon the advice of counsel that it had the legal right to do so, and believing in good faith that it was authorized to charge and collect the 10-cent fare under the expressed terms of the consent granted by the village of Mamaroneck on March 2, 1898, and the evidence also shows that the conductor believed that it was his duty to collect the second fare of 5 cents in accordance with instructions received from the officers of the company, that there was no intentional offense committed and the jury cannot award any sum to the plaintiff, in addition to compensation for his loss of time, the amount which he was obliged to pay for passage upon another car and injury done to his feelings, as punishment for the defendant."

This undoubtedly was as favorable to the defendant as it could expect, being its own request, and subsequently it was modified; the court saying:

"I will charge at the request of plaintiff's counsel, with the consent of the defendant's counsel, that if the jury find that the defendant expressly authorized its conductors to eject passengers for refusing to pay the 10-cent fare between Mamaroneck and White Plains, and vice versa, and if you find that the defendant in directing the passengers so to be ejected acted with malice, that is to say, recklessly or wrongfully without regard to the rights of the plaintiff or the people in general, then you may take into consideration this disregard by way of awarding the plaintiff smart money or exemplary damages. Smart money damages are intended to punish a defendant for doing wrong."

The court then charged several requests made by defendant's counsel, in a measure modifying or limiting the charge as quoted, but without changing its substance in so far as it related to the giving of exemplary damages. The effect of this charge, acquiesced in by the defendant, must be to concede that there was some evidence from which the jury might find the facts suggested. Indeed, it is conceded that the defendant did direct its conductors to eject all passengers who refused to submit to the illegal exaction, and the only justification urged for this disregard of the rights of the public to the service of this public service corporation at the rates fixed by law is the alleged advice of counsel that it had a right to collect double the amount, and that the order of ejectment was made for the purpose of enforcing the collection of 10 cents in the place of the 5-cent fare, which the defendant's predecessor had been accustomed to receive for years.

[2] There is nothing to show that the advice of counsel was given

139 N.Y.S.—48

upon a full statement of all of the facts, and, if it was, it only goes to the mitigation of damages (Moak's Underhill on Torts, 228), not to the rule of law acquiesced in by the defendant, and, if these facts were found by the jury, it was conceded that they might impute that malice which is necessary in the awarding of punitive damages, so that it does not appear that the defendant has any very substantial grounds for this appeal.

[3] The damages for two ejectments, concededly unlawful, has been fixed at $500, and even on the basis of compensatory damages it would not be difficult to justify the amount of the verdict. There is no question that a man who, in good faith, becomes a passenger upon a car of a public service corporation, and pays all that the law requires him to pay, has a right to be transported free from molestation or annoyance. This right would not be impaired by showing that the conductor acted in good faith, in the honest belief that the plaintiff had no such right, and that he was acting in the strict performance of his duty to the defendant. The act, nevertheless, was unlawful, and, being so, the plaintiff had a right to compensatory damages therefor.

[4] These included, not only compensation for the loss of time and the amount the plaintiff was obliged to pay for passage upon another car, but in addition thereto the injury done to his feelings might be taken into consideration by the jury and a suitable recompense given therefor. Hamilton v. Third Avenue Railroad Co., 53 N. Y. 25, 28; Gillespie v. Brooklyn Heights R. R. Co., 178 N. Y. 347, 360, 70 N. E. 857, 66 L. R. A. 618, 102 Am. St. Rep. 503. It is the lawful duty of a passenger to pay the full amount of the fare which the law permits the railroad company to exact, and the ejectment of a passenger, in the presence of his fellow passengers, for a refusal to pay his fare, is in effect an accusation against him of an attempt to avoid his lawful obligations, a humiliation which could not fail to be trying to one of a sensitive disposition, with an inclination to maintain his rights. Just what the measure of damages in such a case should be is difficult to determine. It is left to the judgment of the jury, subject to the power of the court to interfere and set the verdict aside if it is obviously improper, and we do not think this is a case for interference.

The defendant concededly authorized its conductor to eject passengers who refused to submit to an illegal exaction. It was not a mere error in an individual case, as in Hamilton v. Third Avenue Railroad Co., supra, but was a general policy of the defendant; and a mistake of law on the part of a corporation cannot be permitted to deprive the public of its rights, or to subject individuals to humiliation and inconvenience merely because they are unwilling to submit to such exactions, and in view of the charge of the court, to which the defendant consented, we ought not to disturb this judgment, even though it should involve some element of exemplary damages.

The judgment and order of the County Court of Westchester County should be affirmed, with costs. All concur, except JENKS, P. J., who reads for reversal.

JENKS, P. J. I dissent. I think that the damages are excessive. The offending of the defendant was a refusal to carry the plaintiff for a 5-cent fare, when the defendant thought it could charge legally a 10-cent fare. Its attitude, as I understand it, was taken on its belief of right, and was neither defiant nor contemptuous. The plaintiff intended by his refusal to make "a test case," and the defendant responded to his invitation by refusal to accept the 5 cents, and, upon the plaintiff's counter refusal to pay 10 cents, by expulsion in a manner which the plaintiff admitted was perfunctory and polite. There is no proof of any personal injury, or any consequent pecuniary loss. The plaintiff did lose a few moments, and was not allowed in one instance to complete his journey. The actual damages were almost negligible. And there was nothing in the act of the defendant which justified the award of smart money in any such substantial sum as is represented by the verdict in this case.