CARRIE REDMOND WILLIAMS, Respondent, v. EAST ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed June, 7, 1921.

1. **CARRIERS OF PASSENGERS:** Passengers on Car Attacked by Mob: Negligence: Presumptions. In an action for damages against a common carrier for assault committed upon a negro passenger while riding on one of defendant's cars, the carrier having carried such passenger into a city where a mob attacked and injured the passenger, negligence of the carrier will not be presumed from the mere happening of the accident.

2. ———: ———: ———: **Duty of Carrier to Protect Passengers: Rule Stated.** Where a carrier has permitted third persons to enter upon its premises, or cars, and become passengers thereof, the carrier is required to exercise the utmost vigilance to protect the passengers from insult and injury arising from others who occupy similar relations with respect to the party injured, but a different rule prevails with respect to the carrier's liability for injuries to passengers who receive injuries from the acts of persons beyond the control of the carrier, and for which it is in no way responsible, in which case the carrier is only required to exercise ordinary care and vigilance to discover and prevent injury to passengers.

3. **APPELLATE PRACTICE: Refusal of Trial Court to Give Peremptory Instruction: Review: Rule of Decision.** On appeal by defendant after verdict, the appellate court must not only regard the evidence offered on the part of plaintiff as true, but every reasonable inference in favor of plaintiff must be drawn from it.

4. **CARRIERS OF PASSENGERS: Mobs: Riots: Knowledge of Carrier of Operations of Mob Toward Negroes: Carrying Negro Passenger Within Danger Zone: Should Have Anticipated Injury.** A carrier of passengers operating a suburban line into the city of East St. Louis at a time when mobs were engaged in attacking, wounding and killing members of the negro race, and having knowledge of the dangers to which a negro passenger would likely be exposed if she rode on the car on which she did ride, should have anticipated, as a reasonably prudent person would have anticipated, that a negress boarding a car bound for the city, was likely to be subjected to the tortures and treatment which she received, if she were brought into the city of East St. Louis at that time..

5. ———: ———: ———: ———: ———: **Evidence: Question for the Jury.** In an action for damages against a common carrier for alleged assault committed upon plaintiff, a negress, caused by carrying her into the city of East St. Louis at a time when mobs were operating and engaged in attacking, wounding and killing members of the negro race, without her knowledge, resulting in injury to her, whether or not defendant had knowledge of the operations of this mob, or other mobs, in the city of East St. Louis at the time in question, in time to have warned plaintiff of her danger and to have taken reasonable precautions for her protection and safety, *held*, a question for the jury.

6. **TRIAL PRACTICE: Objections to Testimony as Incompetent: Insufficient.** An objection to a question asked a witness, "object to that as incompetent," amounts to no objection at all.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. Frank Landwehr,* Judge.

AFFIRMED.

*Holland, Rutledge & Lashly,* for appellant.

(1) The court erred in refusing to give the peremptory instruction offered by appellant at the close of all the evidence. Chicago & Alton Ry. Co. v. Pillsbury, 123 Ill. 9; Woas v. Transit Co., 189 Mo. 673; Fewings v. Mendenhall, 88 Minn. 336; Bosworth v. Union Road Co., 26 R. I. 314; Cole v. Alton, Granite City & St. L. Traction Co., — Fed. —; Meifert v. New Union Sand Co., 124 Mo. App. 491; American Brewing Assn. v. Talbot, 141 Mo. 674; Fuchs v. City of St. Louis, 467 Mo. 620. (2) The court erred in overruling the objection of appellant to the question asked by respondent of witness Brockway, to-wit, as to the time at which it was known at the office of defendant that riots were prevailing in East St. Louis. This question was improper, because there was no evidence that riots were prevailing in the morning of July 2nd, and also because obviously it called for a conclusion. (3) The court erred in refusing to strike out the answer given by witness Brockway to the question mentioned under the preceding heading, as said answer merely stated a conclusion of the witness and not any facts He stated he found conditions awfully bad, but he did not state any facts upon which he based the said opinion, or communicate any such facts to appellant's manager. (4) The court erred in giving instruction No. 1 at the instance of respondent. It requires a finding that mobs were assaulting negroes in East St. Louis when respondent boarded defendant's car at Belleville, and there was no evidence to this effect. (b) Said instruction required a finding that defendant knew at said time that mobs were assaulting negroes in East St. Louis, when there was no testimony in the case to this effect. See authorities cited under last paragraph.

Also: Stone v. Hunt, 114 Mo. 66; State v. Hope, 102 Mo. 410; Evans v. Interstate Co., 106 Mo. 594; Wilkerson v. Eilers, 114 Mo. 245. (c) Said instruction required a finding against appellant that appellant failed to notify respondent of the danger of riding to East St. Louis, when there is no evidence in the case that appellant had any knowledge of such danger. (d) Said instruction allowed a finding against appellant that the latter knew of the operations of the mobs in East St. Louis and failed to make reasonable provision for the protection of plaintiff, when the police and militia, who were in the immediate vicinity, were unable to do so. (5) The court erred in refusing to give instruction A at the instance of appellant. Where a plaintiff's petition contains an allegation and there is no evidence to support it, it is the duty of the court to require the defendant in the case to state to the jury that there is no testimony to the said effect, and they should disregard the charge. Chrismer v. Bell Telephone Co., 194 Mo. 189. (6) The court erred in refusing to give instruction B offered by appellant. The law is that carriers are under no obligation to maintain the public peace in a city and that duty devolves upon the city and State, and that if the city and State are unable to do so it is not imposed upon the carrier. See authorities cited under heading No. 1. (7) The court erred in refusing to give instruction D at the instance of appellant. Said instruction correctly states the law to the effect that a carrier is bound to accept any person who offers himself for carriage, and in so accepting said person is not under any obligation to communicate to such person any vague apprehensions he may have about dangers that might result from the public enemy. See authorities cited under heading No. 1. (8) The court erred in refusing to give instruction E at the instance of appellant. Plaintiff's petition contained an averment that at the time she was accepted as a passenger in Belleville, mobs in East St. Louis were assaulting colored people and that the defendant had

actual knowledge of this and negligently failed to warn the plaintiff. As there was no evidence that such mobs were assaulting negroes at such time or that the defendant had knowledge thereof, it was not the duty of appellant to state its mere apprehensions, if he had any, to the plaintiff. See authorities cited under heading No. 1. (9) The court erred in refusing to give instruction F offered by appellant, for the reasons mentioned under the preceding heading. (10) The court erred in refusing to give instruction G at the instance of appellant. Said instruction properly stated the law and should have been given, for the law is that if a passenger riding on a car is injured, not because she is a passenger on said car, but merely because a race riot is under progress in the city, there can be no liability on the part of a carrier for injuries inflicted by the mobs. See authorities cited under heading 1, supra. (11) The court erred in refusing to give instruction H at the instance of appellant. Said instruction correctly stated the law and if the car in question was surrounded by large armed mobs and if the strength of the mobs was such that the motorman and conductor in charge of the car could not successfully resist the mob or protect the passenger, the carrier is not liable for such failure to resist the mob. See authorities cited under heading No. 1. (12) The court erred in refusing to give instruction I at the instance of appellant where the petition contains a charge and there is no evidence to sustain it, it is the duty of defendant to so state to the jury and to warn the jury that plaintiff cannot recover thereunder. Chrismer v. Bell Telephone Co., 194 Mo. 189; See, also, authorities cited under heading 1, supra.

*Homer G. Phillips* and *Jesse L. England* for respondent.

A common carrier of passenges, having knowledge that rioters purpose, or, are likely to attack any of its

passengers, while on its cars, is guilty of criminal neg-
ligence to expose such passengers to such peril without
sufficient police protection. C. A. R. R. Co. v. Pillsbury,
123 Ill. L. C. 24. Where a common carrier of passen-
gers ought reasonably to anticipate an attack upon its
passengers by a mob, it is the duty of such common car-
riers to take precautionary measures to protect its said
passengers from the fury of such mob. C. A. R. R. v.
Pillsbury, supra. Where a common carrier might rea-
sonably expect and anticipate from conditions known to
exist, that certain of its passengers are subject to and
likely to be injured, it is the duty of such carrier to make
reasonable provision for safety of such passengers.
Woas v. Transit Co., 198 Mo. 672. If by prompt inter-
vention a threatened injury can be averted, prevented
or mitigated in the case of a common carrier, failure to
promptly take steps necessary to prevent such threat-
ened injury is negligence on the part of the carrier.
Woas v. Transit Co., supra 673; Railroad v, Burke, 53
Miss. 400; Britton v. Railroad, 88 N. C. 536.

NIPPER, C.—This is an action for damages against
a common carrier, for an alleged assault committed upon
plaintiff on the second of July, 1917, while she was
riding as a passenger on one of defendant's street cars
in the city of East St. Louis, Illinois.

Plaintiff in her petition alleges, among other things,
that on the above-named date she became a passenger
on one of defendant's cars, from the city of Belleville,
Illinois, to the city of East St. Louis, aforesaid; that
at the time she took passage on this car, a mob or mobs
were operating in the city of East St. Louis, and then
and there engaged in attacking, wounding, and killing
members of the negro race; that at the time she became
a passenger, the agents and servants of defendant knew
these mobs were operating, and that to carry her into
said city would endanger her life, she being a negro;
that defendant failed to make reasonable provision for

the protection of plaintiff while said car would be passing into said city; that when the car upon which she was being conveyed reached a point near State and Collinsville Avenue, members of said mob assaulted plaintiff in the presence of the motorman and conductor, without any protest or protection being rendered by them to plaintiff; that she was beaten, bruised, and wounded, her clothing torn from her body, with the exception of some clothing above the waistline, and she was rendered practically nude and semiconscious by the action of the members of this mob, and received serious internal injuries.

The petition further avers that the injuries were caused and occasioned by the negligence of defendant in failing to warn plaintiff of the danger of entering said city, whereby plaintiff would have averted said danger, and in negligently carrying her into said city, fully knowing the danger, without taking precautions to protect her from the acts of the mob.

The answer was a general denial.

Upon a trial before the court and a jury, plaintiff recovered judgment for $2,000. Defendant appeals, urging as grounds for reversal; the failure of the court to give a peremptory instruction for defendant, as well as objections to certain instructions given and refused.

Plaintiff resides in Madison, Illinois. On the morning of July 2, 1917, she left her home at that place, and took an electric car to East St. Louis at about nine a. m. After reaching East St. Louis, she changed cars for Belleville, and reached there between eleven or twelve o'clock. She was accompanied by another negro named Kendrick. After transacting such business as she had to transact in Belleville, she started back to East St. Louis shortly after twelve o'clock. When the car in which she was riding reached State and Collinsville streets, it stopped, and members of a mob, armed with guns and clubs, boarded this car, stripped her of her clothing, beat her, and dragged her from the car.

At the time she left Belleville for East St. Louis she had no knowledge of any riotous conditions in the city where she received her injuries. No question being made in this court as to the amount of the verdict, it is unnecessary to set out in detail the nature and character of the injuries which she received. At the time she became a passenger on defendant's street car, no warning was given her of any mobs assembling in East St. Louis, or of any expected or anticipated violence or feeling toward members of her race, and she knew nothing about any such condition until the mob surrounded the car.

Richard Brockway, who was at that time an assistant claim agent for the defendant, and who had been for eight years prior to the date of the alleged assault, testified that on the date in question he was discharging his duties, which were to investigate and settle claims, attend to court cases, and keep down any trouble on the cars; that he was acquainted with all the lines of the defendant company; that it was about twelve and a half miles from Belleville to the place in East St. Louis where plaintiff was assaulted; that it took the street car about forty-five minutes to run that distance; that there was a great deal of excitement in the city that morning caused by the killing of some officers the night before by some negroes; that he noticed this excitement during the morning, went down town, attended to some business for the company, and notified some of the conductors of the cars not to carry any negro passengers over the city, or to pick them up anywhere; that the conditions which he observed were prevailing generally at about ten o'clock in the morning; that the offices of the defendant company were located in the business section of the city, and the crowds were general all along there that morning. At twenty minutes to twelve, and after he had been sending negroes away from some construction work, he went to the office for instructions, and there met Mr. Parsons, the General

Manager, and Mr. Myers, the General Superintendent of the defendant company; that Mr. Parsons asked him how it looked, and to use his own language, he says, "I told him it looked awfully bad, and told him I had notified some of the conductors and motormen and also had kept the crowds away from the cars," and he asked if anything happened to the cars, and I said, "Not that I know anything about," and he said, "That is good." He then went to Mr. Neilson, who was the claim agent, and told him what he had been doing. He says Neilson told him to "cut that out," as that was a matter to be attended to by the transportation department. It further appears from his testimony that the defendant company has means of communicating with its various crews along the line by telephone, and that there is no difficulty in reaching the crews at any place along the line. He says there were some members of the state militia present, the first contingent arriving between eleven and twelve o'clock on that day.

Witness Kendrick testified for plaintiff, and corroborated her in detail.

From the testimony of the defendant's witnesses, it appears that the attack made upon plaintiff was at about 1:10 or 1:15 p. m. The motorman and conductor on the street car in which plaintiff was riding said they knew nothing about the mob until they ran into it, when some one with a gun ordered the conductor to stop the car, and from some witnesses it appears that there were from fifteen hundred to two thousand people in this mob. Other witnesses testified that they noticed no riotous conditions in the city until about the time of this attack.

In cases of this character, negligence will not be presumed from the mere happening of the accident, and the rule with respect to the duty which the carrier owes the passenger is that, in cases where the carrier has permitted third persons to enter upon its premises, or cars, and become passengers thereof, the carrier is

required to exercise the utmost vigilance to protect the passengers from insult and injury arising from others who occupy similar relations with respect to the party injured. A different rule seems to prevail with respect to the carrier's liability for injuries to passengers who receive injuries from the acts of persons beyond the control of the carrier, and for which it is in no way responsible. In the latter case the carrier is only required to exercise ordinary care and vigilance to discover and prevent injury to passengers. [Woas v. Transit Co., 198 Mo. 664, 96 S. W. 1017; Railroad v. MacKinney, 124 Pa. St. 462; C. & A. Railway v. Pillsbury, 123 Ill. 9; Fewings v. Mendenhall, 88 Minn. 336; Bosworth v. Union Railroad Co., 26 R. I. 309.]

Keeping in mind this rule of law, was defendant liable for injuries sustained by plaintiff in this case? In discussing this matter, after verdict, we must not only regard the evidence offered on the part of the plaintiff as true, but every reasonable inference in her favor must be drawn from it. The negligence charged in the petition is the failure of defendant to warn plaintiff of the danger of entering the city of East St. Louis, whereby she may have averted said danger, and in carrying her into the city, fully knowing the danger to her, without taking necessary precaution to protect her.

Considering the evidence most favorable to plaintiff, we find that conditions were "bad," as the term was used by the witness Brockway, early in the morning. Plaintiff had no knowledge of these conditions, being a stranger in the city. She left Belleville for East St. Louis at about 12:15 p. m. The evidence discloses that there was considerable excitement in the city of East St. Louis as early as 10:30 in the morning. A negro had been killed upon the streets not far from defendant's offices. Plaintiff left Belleville for East St. Louis about thirty-five minutes after the witness Brockway stated that he had visted the offices of defendant, and informed the general manager and the general superintendent as to what the conditions were, and the general

manager asked if any of the defendant's cars had been injured. Belleville is only twelve miles away. Telephonic communication could be had at any time, and at almost any place along the line of the defendant railway, and from the inquiries made as to the injuries to defendant's cars, the agents and servants of defendants must have known, even prior to this time, of the riotous conditions existing in East St. Louis. Brockway had been about the city most of the morning. He had been warning conductors and motormen not to take on any negro passengers, and from this evidence it would be a reasonable and fair inference to say that the defendant's agents and servants realized that it would be dangerous for members of the colored race to be riding upon its street cars.

The motorman and conductor in charge of this particular car in which plaintiff was riding said they had no notice; but if they did not, it was certainly due to the negligence of their superior officers who did have knowledge of the conditions, and made no effort to warn plaintiff after they had such knowledge, of the dangers to which she would likely be exposed if she rode on the car on which she did ride, and at that time. If the defendant's agents and servants had not known of the conditions existing, and had unexpectedly run into this mob, then it could not be said that they should have anticipated what was to happen and have kept a police force on the car in order to protect plaintiff from expected injuries from third parties. But the petition in this case seeks to recover for failure to warn, and failure to properly carry plaintiff and protect her, after knowledge on the part of the defendant.

We think it was a question for the jury, as to whether or not defendant had knowledge of the operation of this mob or other mobs in the city of East St. Louis at the time in question, in time to have warned plaintiff of her danger, and to have taken reasonable precautions for her protection and safety. Certainly even ordinary care and prudence, had it been exercised by the defendant, would

have prevented plaintiff from being exposed to the violence of this mob. Mobs always act without regard to law, and under the circumstances of this case a reasonably prudent person would have anticipated that plaintiff was likely to be subjected to the tortures and treatment which she received, if she was brought into the city of East St. Louis at that time. If she had known· the situation as well as defendant, then we would be confronted with a different situtation; but she had no knowledge of conditions, and there is substantial testimony in this record tending to show that defendant knew long before plaintiff became a passenger, of such conditions, and even by the exercise of ordinary care in warning plaintiff could have prevented this unfortunate accident. We are of the opinion, therefore, that the court did not err in refusing to direct a verdict for the defendant. [C. & A. Railway v. Pillsbury, supra.]

Defendant objects to the action of the trial court in overruling the motion offered by the' defendant at the close of the evidence, to strike out that part of the testimony of witness Brockway in which he stated that he reported to the manager at twenty minutes to twelve on the morning of the assault, that conditions were awfully bad, and that he had notified the motorman and conductors not to accept negro passengers. The question asked which brought forth this 'answer was:

"Q. At what time was it known, if you know yourself; at what time was it known at the office that riots were prevailing in East St. Louis?

"A. I do.

"Q. Tell the jury.

"Mr. Haid. Object to that as incompetent."

No further objection was made, nor was any motion made to strike out the answer for any reason, until the close of the case. This objection practically amounted to no objection at all, and there was no error in the trial court's refusal to sustain defendant's motion.

Defendant further complains of error in the giving of plaintiff's instruction No. 1, but such objection is

made to this instruction mainly on the theory that there was no evidence that defendant knew that any mobs were operating in East St. Louis; but what we have heretofore said disposes of this matter. The defendant, after knowledge of the conditions which existed in East St. Louis, not only failed to warn plaintiff, but received her as a passenger, and carried her into the heart of the city where such mobs were congregated, without any protection whatever.

Complaint is made of the refusal of the court to give certain instructions for defendant. We have examined the record with respect to these alleged errors, and all others urged by defendant. We think the law and the facts of this case sustain the verdict of the jury, and that the record is free from reversible error.

The Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J.,* and *Becker J.,* concur; *Daues, J.,* not sitting.