JOHN SHEPARD, APPELLANT, v. KANSAS CITY PUBLIC SERVICE COMPANY, A CORPORATION, RESPONDENT.—162 S. W. (2d) 318.

Kansas City Court of Appeals. May 25, 1942.

*Allan R. Browne* and *Ralph E. Griffith* for appellant.

*Charles L. Carr* and *Hogsett, Trippe, Depping & Houts* for respondent.

1120

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $4250. The court granted defendant a new trial on the ground that it should have sustained its instruction in the nature of a demurrer to the evidence. Plaintiff has appealed.

The facts show that defendant operates a street car system in Kansas City; that one of its single track lines runs through a public park situated north of 71st Street in said city; that on or about September 2, 1939, about 1:30 P. M. of a clear day, plaintiff was a passenger on one of defendant's northbound cars being operated over this line; that the car stopped on the south side of 71st Street and then proceeded northwardly across the street and park in question; that when it reached a point about twelve to twenty feet north of the north line of 71st Street, a hard object, such as a rock or a pine cone, came through the window in front of the seat where plaintiff was sitting, breaking the window and resulting in a fragment of glass entering his left eye causing blindness therein.

Three witnesses testified concerning the accident. Plaintiff, on his own behalf, and the motorman and another passenger, who testified for defendant.

Plaintiff testified that he was sitting on the east side of the car about midway thereof; that when the car stopped on the south side of 71st Street he saw some boys in a large evergreen tree situated on a little knoll twelve to fourteen feet east of the track and twelve to twenty feet north of 71st Street; that there was another tree about eight feet from the one containing the boys with four bicycles lying thereunder; that the boys were bouncing the limbs up and down and throwing objects across the track; that when the boys would throw the branches would expand and plaintiff was thereby given an "opening through there" so that he could see the boys in the tree; that they threw three or four times and threw three or four objects across the track before the street car passed along the side of the tree; that when the car passed by the tree the boys again threw two objects, the first striking between the windows ahead of him with a sound like a shotgun, the next one striking the window ahead of him resulting in the window breaking and causing plaintiff's injury; that he saw the boy throw the rock that broke the window. He further testified that only two objects hit the street car; that the car was going about ten miles per hour; that the operator did not do anything until the object hit the window; that he then stopped the car and inquired of plaintiff "what happened;" that plaintiff replied: "Some fellows threw a rock through the street car window;" that the operator then alighted from the car and the boys hurriedly climbed down from the tree and rode off on their bicycles. Their names or identity were not disclosed. The operator did not ring a bell or sound any warning prior to the accident. Plaintiff further testified that the boys were tall and between fourteen and sixteen years of age, "they were big fellows."

On cross-examination, plaintiff testified that when he saw the boys throwing across the track "I could not tell exactly what they were throwing, . . . but I knew they were throwing;" that he did not know at what they were throwing as he did not see anything;

that "I saw the things leaving their hands;" that when the car crossed over the street he saw them throwing something but he could not tell "whether the things were heavy enough to break a window or not." . . . "Q. And before the street car got there you saw them throw three or four times? A. Yes, sir. . . . I still remained at the window because I thought the boys when I first saw them throwing, I thought they would have judgment not to throw at the street car or throw anything that way towards the street car. . . . I had in mind when I saw these boys throwing that they would not throw at a street car or would not throw across the street car track where the street car would be passing. I did not think they would throw and let the rocks come in contact with the street car so I remained on my side, and I did not look any more than to look out like that and see them and then I did not look at them and I kept my face in front of them until the rocks hit the front end of the street car. Q. In other words, Mr. Shepard, there was not anything in the actions of these boys that caused you to believe that they were going to hit the street car or a window? A. No, sir. . . . I did not think I was going to get hurt. I did not think the boys were going to throw in the path of the street car. I did not think they would throw, and I thought that looked like very funny and then throwing in the way of the street car coming. I did not think the boys would be that bad;" that he had received a questionnaire from defendant through the mail and filled it out. He therein stated: "Those bad boys were the whole trouble," and he testified at the trial that that was his present idea of the matter. He further said in the questionnaire that he was riding on a car through the park the winter before and some one threw a snow ball with a rock in it at the car. He testified that he said in the questionnaire that the rock in the present instance was thrown at the car breaking the glass but he did not state in the questionnaire that any rocks had been thrown across the path of the street car; that the reason he did not so state was that "I was in lots of misery when that letter came to me and I couldn't think what all did happen; but I tried to make it out the best I knew how." The questionnaire contained quite a number of questions.

The motorman testified that the evergreen tree was about fifty feet tall; that he made the safety stop south of 71st Street; that the street is about forty to forty-two feet wide; that he then started across the street and continued forward; that he saw some boys in the tree when he stopped at 71st Street; that he did not see them throw any object; that he saw no sign of anything that would be dangerous; that when the car was about "half way past the tree, the front end past the tree, the center of the car was nearly even with the tree, I heard sounds; it sounded like something pelting the top of the car and at the same time something broke a glass in the

side of the car." That there were four or five objects that struck the car; that he stopped the car and got off; that the boys came down the tree and rode off on their bicycles; that there were three boys; that the first thing he knew of any throwing was "when I heard the sound of the car being pelted as I passed the tree;" that he knew about the playground being along that place in the park; that he knew that children and young boys played there, and knew that young boys will throw rocks; that he very likely threw them himself when he was young; that he knew that the trees were there; that he knew that there was a drinking fountain nearby where a great many young people congregated; that he first saw the boys as he started up across 71st Street; that he saw them as he crossed the street; that "I recall that I was not watching them all the time but I was watching ahead. I could see the boys when I glanced up at the tree. . . . Q. And if you saw boys throwing rocks or objects across the path of the street car, that street car was likely to come into, you would consider that as a point of danger, wouldn't you? A. Yes, but I would have the right to think that they would quit throwing before the car got to them if they had been throwing. Q. I say, if you thought that the boys were not seeing you or did not know that the street car was coming into their path, you would not think it was safe, to deliberately take a street car into that kind of a situation, would you? A. No, if they were throwing, but I would have the right to think that they would quit."

The undisputed evidence shows that no warning was given by the motorman after he started up across 71st Street of his approach toward the tree.

Defendant's witness, Willis, testified that he was sitting on the east side of the car in front of plaintiff looking ahead; that he did not look toward the tree and did not see the boys or see any rocks thrown; that the first time he knew about the rocks or objects was when "we crossed Gregory Boulevard (71st Street) the first thing I knew there was a window had been struck and broken; that was the first thing I knew;" that after the window was struck and broken he saw three boys come down from the tree and ride away on their bicycles; that when he went to get off of the car at 47th Street he saw a green pine cone lying on the opposite ride of the car from where he was sitting and he handed the cone to the motorman.

The petition alleges that there were several boys throwing rocks or other objects across the tracks in front of the street car, "yet defendant negligently drove said street car with plaintiff therein from a position of safety into the path of said rocks or other objects, and across the place where said boys were throwing said rocks, or other objects, then it knew or by the exercise of the highest degree of care could have known that said actions would be dangerous to the plaintiff."

Plaintiff insists that the court erred in granting defendant a new trial for the reason that defendant negligently started up the car from its position on the south side of 71st Street at a time when the boys were visibly throwing rocks across the tracks ahead; and that defendant saw or could have seen said objects were potential hazards to passengers in said car if it were operated in the path of the rocks without a warning of its intention to do so. Plaintiff, in his brief, refers to the rocks or objects being thrown as a line or a barrage of rocks or a hail of stones. In connection with this point plaintiff says: ''This is not a case where the evidence shows that anyone wilfully threw an object in anger at the street car, or intentionally at the street car. The evidence is to the contrary. The street car is about to go through a public playground. It is stopped and about to start and enter an area where there is a drinking fountain for young people, a playground where they congregate, and three or four boys plainly visible in a tree near the tracks and throwing a line or barrage of rocks across the tracks some sixty feet ahead of the street car and directly across the path which the street car intends to pursue. All this is visible to a passenger in the street car seated halfway back. The operator himself sees the boys, and may fairly be held to have seen that they were throwing across the tracks.''

Defendant takes exception to plaintiff's statement that there was a line, barrage or hail of stones or other objects being thrown across the tracks in front of the street car. We think that defendant's position must be sustained in this regard.

Plaintiff, on direct examination, first stated that he first saw the boys throwing across the tracks ''just as this car stopped I saw that, and when the car got across the street and it was making about ten miles an hour and they were still throwing, but I did not know whether they were throwing at the car or not, but they were just throwing.'' Later, he was asked: '' What did he (the motorman) do from the time when you first saw the boys throwing these rocks across his path? What was the street car doing? A. The street car was in motion, going on through. Q. It had started up? A. Yes, sir. Q. And did it go right into the path of these rocks? A. It went right into the path of these rocks; yes, sir.'' Later, he testified: ''The rocks the boys were throwing across the street car line—the street car was standing when I first saw it, and the boys were in the trees and the bushes were waving like that (indicating). Q. I know; you told that. A. And then when the street car started on across I noticed the boys were throwing and then when I got—when the street car got across the track—the street—one rock hit the front part of the street car between the windows. It sounded like a shotgun and the next one hit right there behind it and busted the window out.''

On cross-examination, he testified: ''Q. All right; how many times did these boys throw something before the street car got to the

tree, about how many times would you say? A. Well, when I first saw them they were pitching I guess about three or four times like that, you know. . . . Q. And before the street car got there you saw them throw three or four times? A. Yes, sir. . . . Q. All right. Now, where was the front end of this street car with reference to Seventy-first Street when you first saw these boys throwing something? A. Standing still. Q. It was standing still? A. Yes, sir. Q. And then by the time it moved up and crossed the street and got to the tree there had been three or four things thrown, is that correct? A. Yes, sir.''

The jury, of course, was at liberty to find that the operator of the street car saw the same things that plaintiff saw, but plaintiff testified that he saw only three or four objects thrown before the car reached the tree; that he did not then know what these objects were and did not know whether they were heavy enough to break a window. Plaintiff's evidence seems plain that missiles were thrown when the street car was standing still and when it started up to cross 71st Street but whether missiles were thrown after it had crossed the street and before it arrived opposite the tree is indefinite unless we consider his testimony that he did not expect the boys to throw at the car. It will be remembered that he testified that some of the objects were thrown before the car started, some as it started up and that there were only three or four missiles thrown altogether. He testified that he assumed that the boys would not continue throwing so as to hit the street car when it was passing the trees; *that there was nothing in the action of the boys to cause him to believe that they were going to hit the street car or window.* His evidence fails to show that there was a continuous throwing of rocks or other missiles and the car was propelled right into the barrage, as he now claims. [Steele v. Railroad, 265 Mo. 97; Adelsbergh v. Sheehy, 59 S. W. (2d) 644.] It was plaintiff's theory at the trial that the boys could see the car because he stated that he expected them to desist throwing. There is no question but that the motorman could have assumed likewise. Plaintiff says this is not a case of an intentional throwing at the street car; that it is not to be presumed that the boys saw the car before they threw the rocks that struck it; that ''it is to be presumed that they did not see, as no one will be presumed to have violated the law.''

It would appear, beyond any question, that the boys did know of the presence of the street car at the time one of them threw the rock causing plaintiff's injury. The car had stopped a short distance away and had started up. It undoubtedly made considerable noise. It proceeded on and, in passing the trees, it was only twelve or fourteen feet away. The rocks did not hit the front end of the car, but the middle thereof. Plaintiff saw the boy who threw the missile causing plaintiff's injury and, undoubtedly, this boy saw the car when he threw. Plaintiff's version at the trial was that the

boys could see the car because he stated that he expected them to desist throwing. The throwing of such an object is made a crime by the statute, section 4525, Revised Statutes of Missouri, 1939, and the operator of the car was under no duty to anticipate that the boys would violate the law (Woas v. St. Louis Transit Co., 198 Mo. 664), even though they were throwing rocks across the tracks before the car approached the tree. [Reno v. St. Louis & Suburban Ry. Co., 180 Mo. 469, 489.]

However, even though the missiles were not intentionally thrown at the street car, and the boy who threw the one causing plaintiff's injury did not know the car was present on account of the density of the foliage of the trees, nevertheless, the motorman was not guilty of any negligence in proceeding forward past the tree unless he knew, or in the exercise of ordinary care, could have known, that the boy would throw a missile. [Reno v. St. Louis & Suburban Ry. Co., *supra.*] There is nothing in the evidence tending to show that the motorman knew or should have known that the boy who threw the object did not know, if so, of the approach or the presence of the car. Even, if it can be said that there is a presumption that the boys were not purposely throwing at the car, still the motorman did not know that one of them was oblivious of its approach and would throw at it until the car was struck and it was too late then for him to have avoided plaintiff's injury.

We have examined O'Gara v. St. Louis Transit Co., 204 Mo. 724, and like cases cited by plaintiff and find them not in point. These cases are to be distinguished from the case at bar. [See Williams v. East St. Louis Suburban Ry. Co., 207 Mo. App. 233, 241; Rice v. Railroad, 153 Mo. App. 35, 43-48; Malone v. Railway Co., 202 Mo. App. 489, 495.]

The judgment is affirmed and the cause remanded. All concur.