■ MIRIAM HERMAN, an Infant, by ALEXANDER HERMAN, Her Father and Natural Guardian, et al., Respondents, v. TRANS WORLD AIRLINES, INC., Appellant.— In an action to recover damages for personal injuries sustained by the infant plaintiff and for medical expenses incurred by her father, etc., defendant appeals from an order of the Supreme Court, Kings County, dated March 28, 1972, which granted plaintiffs' motion for summary judgment on the issue of liability. Order reversed, without costs, and motion denied. On September 6, 1970, the infant plaintiff was a passenger on defendant's aircraft en route from Israel to New York when skyjackers diverted it and forced it to land in a Jordanian desert. The passengers were kept captive

on the aircraft for several days and the infant plaintiff claims that as a result she suffered extreme fright, depression, loss of weight, sleeplessness, nightmares and a recurrence of a pre-existing dermatitis. There was no bodily contact injury. Plaintiffs moved for summary judgment on the issue of liability, claiming that article 17 of the Warsaw Convention [49 U. S. Stat. 3014, 3018] extends to "personal injuries" as that term is presently understood in the law of this State (cf. *Battalla* v. *State of New York*, 10 N Y 2d 237). Defendant urged that it is liable only "in the event of the death or wounding * * * or any other bodily injury suffered by a passenger," under the specific wording of the English translation of article 17. It appears that the original text of the Warsaw Convention is in French and hence the resolution of the question presented depends upon the precise meaning of the official French text of article 17. This presents a triable issue of fact, since the court may not take cognizance of the meaning of a foreign language (cf. *Matter of Tomljenovich*, 154 N. Y. S. 2d 327, 331; see, also, *People* v. *Yui Kui Chu*, 273 N. Y. 191, 197; *Hossbach* v. *Behr*, 139 App. Div. 793). Article 17 of the Warsaw Convention was not in any manner affected by the so-called Montreal Agreement of 1966, since the latter merely increased the limit of the liability of the signatory carriers and deprived them of any defense under subdivision (1) of article 20 of the Warsaw Convention, namely, that the carrier is not liable if it proves that it and its agents took all necessary measures to avoid the damage or that it was impossible for it or them to take such measures. It is undisputed that the Warsaw Convention was signed in 1929, long before this State in *Battalla* (*supra*) permitted recovery for emotional or neurological disturbances with residual physical manifestations. In our opinion summary judgment should not have been granted. (See *Husserl* v. *Swissair*, N. Y. L. J., Nov. 9, 1972, p. 1, col. 6; — F. Supp.—) Munder, Martuscello, Gulotta and Brennan, JJ., concur; Hopkins, Acting P. J., dissents and votes to affirm, with the following memorandum: The infant plaintiff, a Jewess, was a passenger on defendant's flight from Tel Aviv, Israel, to New York. At Frankfort, Germany, the aircraft was hijacked by the Popular Front for the Liberation of Palestine, an Arab terrorist group. The aircraft was directed to Jordan and there the infant plaintiff and the other passengers were held for seven days on board the aircraft in the desert. Thereafter they were taken by bus to Amman, Jordan, the aircraft in the meantime having been destroyed. Finally, the infant plaintiff was transported to Nicosia and thence to New York. The infant plaintiff alleges that during this experience and thereafter, as a result, she was and has been extremely frightened and tense and she lost weight and developed a skin rash (atopic dermatitis). She seeks recovery under the Warsaw Convention as amplified by the Montreal Agreement. In particular, she claims the benefit of that section of the Montreal Agreement which imposes absolute liability on an air carrier to the upward limit of $75,000 "for death, wounding, or other bodily injury" (Montreal Agreement, § 1, subd. [1]). Special Term has granted summary judgment in favor of plaintiffs and has ordered an assessment of damages. On this appeal defendant argues (1) that the Warsaw-Montreal complex of writings does not include damages for emotional anguish and (2) that it does not apply to acts which occurred while the aircraft was on the ground in Jordan. Neither ground in my opinion bars recovery. Our State recognizes the Warsaw Convention of 1929 as a treaty which "must be construed reasonably and so as to accomplish its obvious purposes" (*Ross* v. *Pan American Airways*, 299 N. Y. 88, 97). Originally the Convention limited the liability of international airlines to the sum of approximately $8,300 payable to a passenger for damages arising out

of their negligence, at the same time creating a presumption of liability on the carrier from the happening of an accident (Lowenfeld and Mendelsohn, United States and the Warsaw Convention, 80 Harv. L. Rev. 497, 521). The dissatisfaction which was expressed generally in the United States with this low monetary limit reached a climax in 1965, when on November 15 our Nation gave notice of denunciation of the Convention. That notice was withdrawn on May 13, 1966 as a result of the Montreal Agreement. The Montreal Agreement is a contract of the carriers, approved by the Civil Aeronautics Board. The events preceding its execution make clear that it is a compromise of opposing views (see the excellent discussion in Lowenfeld and Mendelsohn, op. cit., pp. 509–516, 532–575, 586–596). It did two things: (1) it substituted a limit of $75,000 in place of $8,300 and (b) it eliminated any requirement of a showing of negligence on the part of the carrier. Indeed, defendant concedes that the Agreement, as defendant says in the affirmation submitted to Special Term in opposition to the motion for summary judgment, "might impose liability upon it for the acts of third parties."[1] The arguments presented by defendant thus raise the issue of the extent of the liability. The first argument — that the liability does not extend to emotional disturbance — revolves about the kind of damages recoverable. The second argument — that the liability is restricted to acts within the aircraft while airborne — relates to the duration of the suffering of the infant plaintiff for which she may be compensated. For many years before the Warsaw Convention, common carriers under accepted doctrine were subject to special obligations. "It is settled that a common carrier has a legal duty, after due notice, to protect its passengers from the assaults of fellow passengers" (Green Bus Lines v. Ocean Acc. & Gwar. Corp., 287 N. Y. 309, 312; cf. Putnam v. Broadway & Seventh Ave. R. R. Co., 55 N. Y. 108, 113). That responsibility embraced the protection of passengers from assaults from an intruder after knowledge of the danger (Pullman Co. v. Culbreth, 2 F. 2d 540; Wilson v. Pan-Amer. Bus Lines, 217 N. C. 586; Williams v. East St. Louis & Suburban Ry. Co., 207 Mo. App. 233; see, generally, anno., 77 ALR 2d 504). If the employees of the carriers participated in the acts, damages for humiliation and injured feelings were recoverable (14 Am. Jur. 2d, Carriers, §§ 1198, 1201; cf. Daymon v. Westchester St. R. R. Co., 154 App. Div. 796, affd. 214 N. Y. 637). The Montreal Agreement must be considered in the light of these common-law principles, even though the binding meaning of the Warsaw Convention is the French legal meaning (Block v. Compagnie Nationale Air France, 386 F. 2d 323, 330). In this case this is particularly so, as the parties have treated the issues here to be determinable by domestic law and have not presented to us the applicable French law (cf. Watts v. Swiss Bank Corp., 27 N Y 2d 270, 276; Savage v. O'Neil, 44 N. Y. 298, 300–301). Hence, the authors of the Montreal Agreement must have had in mind the common-law liability of carriers in reaching the compromises which the Agreement reflects. It is not without significance that at the time of its execution in 1966 the holding in Battalla v. State of New York (10 N Y 2d 237), permitting recovery for

---

1. It might be said that the Montreal Agreement, as a private compact among carriers, is not entitled to the same respect as a treaty; and that, accordingly, it should be construed in the same way as any other private contract, to the end that any ambiguity should be resolved against its authors and all inferences drawn in favor of its beneficiaries (cf. 4 Williston Contracts [3d ed.], §§ 621, 610B). This construction I have not adopted and I have viewed the Warsaw Convention and the Agreement in pari materia.

fright without physical impact, had been in existence since 1961 and that, indeed, as Judge Burke in *Battalla* pointed out, damages for emotional disturbance were then allowed in England and in a majority of American jurisdictions (*Battalla* v. *State of New York, supra,* p. 239). Defendant does not dispute the incident, or that the infant plaintiff was frightened, or that a traumatic experience of a hijacking and kidnapping for seven days might reasonably result in her emotional condition. Its position simply is that her condition is not a "wounding, or other bodily injury." This, in my opinion, under common-law principles, is too narrow a construction. The infant plaintiff in fact suffered a loss of weight and atopic dermatitis, which are manifestations of bodily injury. Moreover, defendant overlooks the words in *Battalla* which equate emotional injuries with physical injuries (*Battalla* v. *State of New York, supra,* p. 242): "In many instances, just as in impact cases, there will be no doubt as to the presence and extent of the damage and the fact that it was proximately caused by defendant's negligence. In the difficult cases, we must look to the quality and genuineness of proof, and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out the dishonest claims." The nervous system and the psychic processes of the brain are as much a part of the body as the legs or arms. The infant plaintiff's damages must be established by her proof of injury — and this will take place at the assessment. In coming to this conclusion of the extent of liability under the Montreal Agreement to which its signatories bound themselves, I have accepted the English translation of the French terms of the Agreement submitted by defendant. It is unnecessary in my view to go beyond that translation to determine the meaning of "bodily injury". The second point of defendant's argument needs little discussion. Even assuming that defendant's construction of the Agreement limiting its liability for the events during flight is correct, it is obvious that there were events during flight which were precipitating causes of the infant plaintiff's injuries. The fact that other events occurred on the ground which contributed to her condition would not defeat her right to recovery or to an assessment of damages, but merely affects the admissibility of evidence at the assessment and the extent of her damages. But I do not think that defendant is correct. Under article 17 of the Convention the defendant is liable "if the accident which caused the damage so sustained took place on board the aircraft." The infant plaintiff was on board the aircraft throughout the events, which together constituted one continuing accident. In short, the absolute liability undertaken by defendant contemplated the responsibilities which carriers under common-law principles had incurred in years past. The absolute liability was undertaken in return for a limitation on the amount of recovery. The infant plaintiff need not establish negligence on the part of defendant, but she must establish injury arising out of the breach of defendant's responsibility.[2] Accordingly, I would affirm the order.

---

2. As Lowenfeld and Mendelsohn indicate in their article (United States and the Warsaw Convention, 80 Harv. L. Rev. 497, 519-522), the United States courts have considered that common-law actions were not wiped out by the Warsaw Convention and that the latter created no new cause of action; moreover, the common-law doctrine of *res ipsa loquitur* was used by our courts to regulate the once necessary proof of negligence — an indication that common-law doctrine was always used as the vehicle by which liability under the Convention was determined.